JONATHAN LOVEJOY, ADMINISTRATOR C.T.A. (ESTATE OF FREDERICK LOVEJOY), ET AL. v. WILLEM VAN EMMENES ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued February 7—decision released April 10, 1979

*Louis S. Ciccarello,* for the appellants (plaintiffs).

*Thomas C. Gerety,* with whom was *Brian P. Maher,* for the appellees (defendants).

BOGDANSKI, J. In an action for an injunction and for damages brought by the owners and operators of an oyster bed against the owner and against the lessee of adjoining land, the trial court found the issues in favor of the defendants. From that judgment the plaintiffs have appealed to this court.

The following facts are not in dispute: The plaintiffs are the owners and operators of Oyster Lot No. 201 in Norwalk Harbor. The defendant Wilhelmina van Emmenes is the owner of property on Wilson Point, Norwalk, which abuts Long Island Sound, while the defendant Joseph Gimma has been the lessee of the van Emmenes property since 1959, and continues to lease it to the present time. Oyster Lot No. 201 lies close to the easterly boundary of the van Emmenes property.

Prior to 1969, the defendants maintained a dock, 150 feet in overall length, projecting over the waters of Long Island Sound. This dock extended seventy to eighty feet into Lot 201. In 1969, Gimma arranged for and caused to be constructed a somewhat longer dock, which extends twenty feet further into Lot 201. Prior to 1969, the plaintiffs planted and harvested shellfish from Lot 201 by the use of boats and

dredges. The effect of the new dock was to render such operations impracticable as regards three-tenths of an acre of Lot 201.

Additional facts found by the court include the following: the depth of water at the seaward end of the 1961 dock was thirty-six inches at low tide, and sometimes less; in 1967, Gimma acquired a boat forty-three feet long with a draft of forty-two inches; the purpose of the 1969 dock was to obtain additional water depth to accommodate the draft of Gimma's boat; the new dock on the seaward end provides forty-two to forty-four inches of water at low tide; even with the additional depths of water at the 1969 dock, on several occasions of extreme low tide, the Gimma boat rested on the bottom and was damaged; the protective pilings maintained at each side of the old dock were removed when the new dock was completed, and as a result the new dock is between thirty-three and thirty-eight feet narrower than was the old dock; there are rocks and other obstructions to the east of the dock and a breakwater on each side; Gimma relied on his contractor to obtain whatever approvals might be needed to construct the dock; the dock was constructed before the necessary governmental permits were obtained; all permits, however, were obtained soon after completion of the dock; the plaintiffs have not planted or taken any shellfish from Lot 201 since the 1969 dock was installed.

The trial court concluded that in wharfing out to reach deep water the upland owners acted reasonably and within their rights as riparian owners; that the reasonableness of the wharfing out finds support in the issuance of permits by the various governmental agencies concerned, including the

United States Army Corps of Engineers; and that it is still practicable to plant oysters on all but three-tenths of an acre of Lot 201.

The plaintiffs first assign error in the court's failure to find certain facts claimed to have been admitted or undisputed. A fact is not admitted or undisputed merely because it has not been contradicted. *Sea Beach Assn., Inc.* v. *Water Resources Commission,* 164 Conn. 90, 92, 318 A.2d 115 (1972). In order to secure an addition to the finding, the plaintiffs must point to some part of the appendix, the pleadings or an exhibit properly before us which discloses that the defendants admitted the truth of the facts or that their validity was conceded to be undisputed. See Practice Book, 1978, § 3045; *Malarney* v. *Peterson,* 159 Conn. 342, 344, 269 A.2d 274 (1970). The record in this case does not support the plaintiffs' claim that additions to the finding are warranted.

The plaintiffs next contend that the trial court erred in concluding that the defendant upland owners had exercised their right to wharf out to deep water in a reasonable manner, and in concluding that the defendants had not unduly interfered with the rights of the plaintiffs in the use of their oyster bed.

While the state, as the representative of the public, is the owner of all land between the high and low water marks upon navigable waters, the defendants' ownership of adjoining upland gave them certain exclusive yet qualified rights and privileges in the waters and submerged land adjoining and in front of their upland. *Bloom* v. *Water Resources Commission,* 157 Conn. 528, 533, 254 A.2d 884

(1969); *Rochester* v. *Barney,* 117 Conn. 462, 468, 169 A. 45 (1933). These rights include "the exclusive right to dig channels and build wharves from his land to reach deep water, so long as he does not interfere with free navigation." *Shorehaven Golf Club, Inc.* v. *Water Resources Commission,* 146 Conn. 619, 624, 153 A.2d 444 (1959). The plaintiffs concede, as they must, that under the common law the right of a riparian owner to wharf out to deep water is superior to that of an owner of an oyster bed. *Lovejoy* v. *Water Resources Commission,* 165 Conn. 224, 229, 332 A.2d 108 (1973); *Lovejoy* v. *Darien,* 131 Conn. 533, 538, 41 A.2d 98 (1945); *Prior* v. *Swartz,* 62 Conn. 132, 138, 25 A. 398 (1892). We note moreover that the rights of riparian owners are expressly excepted from the rights granted by statute to oyster bed owners. General Statutes § 26-249.[1]

The sole issue before the trial court was thus whether the defendant upland owners exercised their right to wharf out in a reasonable manner.

The trial court's conclusions are tested by the finding; *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645 (1970); and the court's conclusions must stand unless inconsistent with the facts found or unless they involve the application of some erroneous rule of law. *Craig* v. *Dunleavy,* 154 Conn. 100, 105, 221 A.2d 855 (1966). Under existing law, the

---

[1] "[General Statutes] Sec. 26-249. PRIVATE OWNERSHIP IN CULTIVATED SHELL-FISH. Each person who plants or cultivates oysters, clams or mussels, in any place lawfully designated, shall . . . have the exclusive right . . . of using such place for the purpose of planting or cultivating oysters, clams or mussels therein, which place shall be transferable by written assignment; but nothing herein contained shall affect the rights of any owner of lands . . . contiguous to such navigable waters; nor . . . infringe upon the free navigation of such waters . . . ."

plaintiffs had the burden of showing that the action of the upland owners in wharfing out was not reasonable.

The facts as found indicate that the purpose of extending the wharf was to reach water deep enough at low tide to accommodate the defendant Gimma's forty-three foot boat; that Gimma had taken depth soundings in the area and had had his boat especially designed and built so as to adapt to the water conditions found, and that the wharfing out had a minimal effect upon the oyster bed. Although the plaintiffs claim that they have not harvested any shellfish from Lot 201 since the extension of the defendants' dock, there is nothing in the record to indicate that their decision to discontinue operations was caused by the extension of the dock. The record reveals, rather, that the net effect of the extension was simply to add one to two hours to the time required to dredge the oyster bed. Those facts and others found by the court reasonably support the court's conclusion that in wharfing out the defendant upland owners acted reasonably and did not unduly interfere with the rights of the plaintiffs in the use of their oyster bed.

The plaintiffs next claim that the trial court erred in admitting into evidence (1) uncertified copies of government navigation charts, and (2) permits from the Army Corps of Engineers and the state water resources commission.

A key factual issue in the case was whether the defendants had access to deep water with their old dock. This issue necessarily involved evidence as to the depth of the water at the head of the dock. The plaintiffs offered testimony that the defendants had reached deep water with their 1961 dock installa-

tion.  When the defendants sought to dispute that evidence by offering into evidence coastal and geodetic charts showing water depths in the area of the dock and of Lot 201, the plaintiffs objected on the ground that the charts were not certified copies, that the information thereon constituted hearsay, and that there was no basis for determining their accuracy.  The court overruled those objections and admitted the charts.

We note first that the charts were clearly relevant on the issue of the depth of the water in the area in question and that official certification is not necessary as regards such charts.  See *Bost* v. *United States,* 103 F.2d 717 (9th Cir. 1939); 2 Wigmore, Evidence § 1420 et seq.  Finally, the plaintiffs themselves admitted that the charts offered as exhibits were in fact governmental charts of the Long Island Sound area and were used by mariners, including the plaintiffs themselves, in navigating those waters. We conclude, therefore, that the trial court did not err in admitting into evidence the navigation charts offered by the defendants.

As previously noted, the central issue before the trial court was the reasonableness of the defendants' action in wharfing out.  On this issue, the defendants offered into evidence certain permits issued to them by the Army Corps of Engineers and the state water resources commission.  While it is true that these permits were not conclusive on the issue of reasonableness, the fact that the defendants' action in wharfing out received governmental sanction was certainly relevant on the issue of reasonableness, and the trial court cannot be said to have erred in admitting those permits.

The plaintiffs' final claim is that because the defendants' 1969 dock was constructed without a

permit, in violation of § 25-7d of the General Statutes, they have a right to damages on the ground that this structure constituted a public nuisance, under the provisions of § 25-7e, from the date of its construction in 1969 until May of 1970, when the necessary permit was issued. The plaintiffs' reliance on the public nuisance provision of § 25-7e[2] is, however, misplaced.

The plaintiffs concede that § 25-7e is in aid of navigation and that the language in this statute, providing that any structure which is constructed or maintained in tidal, coastal or navigable waters without a permit shall be considered a public nuisance, is intended to empower the commissioner of environmental protection and the attorney general to act expeditiously for the removal of unlicensed structures which constitute obstructions to navigation. The interests of the plaintiffs as oyster bed owners and operators are not within the class of the interests intended to be protected by this statute.[3] The plaintiffs cannot therefore use the public nuisance provision of this statute as the basis of a claim for damages.

There is no error.

In this opinion the other judges concurred.

---

[2] "[General Statutes] Sec. 25-7e. STRUCTURE AS NUISANCE. Any structure, obstruction or encroachment placed in the tidal, coastal or navigable waters of the state or any activity carried out incidental to the construction or maintenance of such structures or encroachments without a certificate or permit from the commissioner shall be considered a public nuisance. The attorney general shall, at the request of the commissioner, institute proceedings to enjoin or abate any such nuisance."

[3] See 10 H. R. Proc., Pt. 13, 1967 Sess., pp. 5097–98. The remarks of Representative Howard Dreyfous reveal clearly that General Statutes § 25-7e was intended to aid navigation and not to create a private right of action for damages.