DELFORD W. EDENS ET AL. *v*. KOLE CONSTRUCTION
COMPANY

SPEZIALE, C. J., HEALEY, PARSKEY, ARMENTANO and SHEA, Js.

Argued June 8—decision released September 28, 1982

*Joseph N. Tauber,* for the appellant (defendant).

*William T. Cahill* and *Cuyler M. Overholt,* for the appellees (plaintiffs).

ARTHUR H. HEALEY, J.   This is an action for breach of a construction contract to build a single family residence.  On March 9, 1973, the plaintiffs-purchasers entered into a contract with the defendant building contractor for the construction of a house on Perkins Road in Greenwich.  The total contract price was $128,000 and the parties have stipulated that $103,000 was actually paid to the defendant.  Although the house was contracted to be completed in August, 1973, it had not been completed by September 28, 1973, at which time the plaintiffs determined that the defendant's work was defective and notified the defendant that they were terminating the contract.  In fact, no certificate of occupancy was issued until April, 1974.

The plaintiffs moved into the house in September, 1973, before final completion but with the knowledge of the defendant.  Two or three weeks after the plaintiffs had moved in, there was a heavy rainstorm which was part of a tornado in the area.  The roof on the plaintiffs' house leaked in many places during this storm.  The plaintiffs called the defendant who allegedly repaired the leaks and placed a plastic cover on the entire roof.  The plaintiffs also found that there were leaks into the basement of the house from the roof and that the gutter pipes were improperly hooked onto the drainpipes.  The plaintiffs also claimed that there were many other defective or incomplete items in the house[1] besides the leaky roof and improperly installed drainpipes.

---

[1] These included an excessively high grade of earth at the rear of the house causing a flooded basement; inadequate duct fans and chimney connections from the furnace allowing smoke into the house; problems with the heating, ventilating and air conditioning systems causing a delay in the issuance of the certificate of occupancy;

The plaintiffs filed suit seeking $100,000 in damages for the defective construction of the house and an injunction ordering the immediate release of a mechanic's lien which the defendant filed on the plaintiffs' property. The defendant counterclaimed alleging that it had completed its obligations under the contract and that the plaintiffs still owed approximately $52,430.93 for the remainder of the contract price and extras. The defendant also counterclaimed for foreclosure of the above-mentioned mechanic's lien.[2]

The trial court filed two memoranda of decision and a special finding of facts.[3] It found for the plaintiffs on the complaint but also found that the evidence justified an award of only $17,152.65 plus interest to the plaintiffs for the defective roof and the improperly installed drainpipes. In addition, the trial court specifically found for the plaintiffs on the defendant's counterclaim. It held that there was sufficient justification for the plaintiffs' action in terminating the contract in light of the evidence that the roof had been poorly installed and the evidence of the large number of items which were unfinished a month after the house was scheduled to be completed. The court also found, in response to the defendant's motion to reopen, that the defendant was not entitled to the $25,000 balance of the con-

improperly functioning plumbing system; the interior trim and tile were in poor condition requiring replacement; improperly connected and installed Lally columns and oven vents; sliding glass doors and flagstone exit walks were never installed.

[2] The defendant also filed a special defense alleging that the roof was damaged by an act of God, namely, the tornado.

[3] The second memorandum of decision and special finding of facts was in response to the defendant's request for special findings of facts and motion to reopen the judgment filed on April 7, 1980, and April 15, 1980, respectively.

tract price because it had not completed the contract. The court stated that only $103,000 was due and that the plaintiffs had already paid that amount. Finally, the court found that the defendant's evidence[4] in support of its contention that it had completed 97 percent of the construction was "unconvincing" because the estimate was based on "what sounded like a cursory inspection . . . ."

The defendant has raised four claims of error in this appeal. Specifically, it claims that the trial court erred by failing to subtract the plaintiffs' $17,152.65 damage award from the $25,000 balance due the defendant on the contract; by improperly finding that the defendant was entitled to no part of the $25,000 balance on the contract; by inconsistently holding that the plaintiffs' evidence was insufficient to warrant a monetary award but also that the plaintiffs were entitled to an award of $17,152.65 plus no obligation to pay the remaining $25,000 balance on the contract; and by totally rejecting the $21,831.63 counterclaim for "extras" performed.

The defendant's first two claims of error address the same issue. That issue is basically whether the court erred by failing to net the plaintiffs' $17,152.65 damage award against the $25,000 balance allegedly due the defendant under the contract. The defendant alleges that it substantially performed the contract by completing 97 percent of the construction and, therefore, is entitled to 97

[4] This evidence consisted of testimony by Anthony Kolich, secretary and treasurer of the defendant for eighteen years, and testimony by Madelyn Kolich, bookkeeper of the defendant.

percent of the contract price offset by the amount already paid by the plaintiffs plus the additional damage award of the court.[5]

At the outset, we note that the defendant has not challenged the award of $17,152.65 in damages to the plaintiff for the defective roof and drainpipes. We understand its claim of error to refer only to the trial court's refusal to find that it was entitled to the $25,000 balance allegedly due on the contract and in the court's failure to deduct the damage award from this balance.

We must determine if the defendant sufficiently proved his claim that he was entitled to the balance due on the contract by virtue of his alleged 97 percent completion of the contract. The contract between the parties provided as follows: "In the event the BUILDER shall breach this contract, or shall neglect to prosecute the work hereunder diligently and properly or in the event the BUILDER is adjudged a bankrupt or shall make an assignment for the benefit of creditors, or if the assets of the BUILDER are placed in the hands of a receiver, then this contract shall terminate at the option of the OWNER upon ten (10) days' written notice given to the BUILDER, and the OWNER shall not be further obligated to make any additional payments hereunder *(except those to which the BUILDER shall be entitled for work already performed)*, fully reserving to himself any and all rights and remedies which he may have at law or in equity against the BUILDER." (Emphasis added.)

---

[5] The defendant argues that 97 percent of the $128,000 contract price equals $124,160. Against this figure is credited the $103,000 already paid by the plaintiffs plus the $17,152.65 in damages awarded by the trial court. This totals $120,152.65 and leaves a $4007.35 balance allegedly due the defendant plus interest.

" 'There is no reason why one who has substantially performed . . . a [building] contract, but unintentionally failed of strict performance in the matter of minor details, should have imposed upon him as a condition of recovery for that of which the other party has received the benefit, the burden of showing by direct evidence its reasonable value, or why he should be deprived of all benefit of the contract which he has substantially performed.' *Daly & Sons* v. *New Haven Hotel Co.*, 91 Conn. 280, 287–88, 99 A. 853 (1917)." *Vincenzi* v. *Cerro*, 186 Conn. 612, 615, 442 A.2d 1352 (1982).

Substantial performance of a building contract, however, is ordinarily a question of fact for the trier to determine. *Randolph Construction Co.* v. *Kings East Corporation*, 165 Conn. 269, 274, 334 A.2d 464 (1973); *Chinigo* v. *Ehrenberg*, 112 Conn. 381, 384, 152 A. 305 (1930); *Daly & Sons* v. *New Haven Hotel Co.*, 91 Conn. 280, 290, 99 A. 853 (1917); *Morehouse* v. *Bradley*, 80 Conn. 611, 614, 69 A. 937 (1908); *T. Lippia & Son, Inc.* v. *Jorson*, 32 Conn. Sup. 529, 531, 342 A.2d 910 (1975). The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. Practice Book § 3060D; *Superior Wire & Paper Products, Ltd.* v. *Talcott Tool & Machine, Inc.*, 184 Conn. 10, 17, 441 A.2d 43 (1981); *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). "It is peculiarly within the province of the trier of fact to judge the credibility of a witness. *DeLuca* v. *C. W. Blakeslee & Sons, Inc.*, 174 Conn. 535, 547, 391 A.2d 170 (1978). 'It is the trial court which had an opportunity to observe the demeanor of the witnesses and parties; thus, it is best able to judge

the credibility of the witnesses and to draw necessary inferences therefrom.' *Kukanskis* v. *Jasut,* 169 Conn. 29, 32–33, 362 A.2d 898 (1975). This court cannot retry the facts or pass on the credibility of the witnesses. *Johnson* v. *Flammia,* 169 Conn. 491, 497, 363 A.2d 1048 (1975)." *Vesce* v. *Lee,* 185 Conn. 328, 335, 441 A.2d 556 (1981). Judgments pertaining to the resolution of conflicting factual claims lie within the province of the trial court. *Fairfield County National Bank* v. *DeMichely,* 185 Conn. 463, 466, 441 A.2d 569 (1981); *Logan* v. *Lenhart,* 158 Conn. 611, 612, 259 A.2d 643 (1969).

Upon reviewing the entire record before us, we cannot find any reason to disturb the trial court's finding that the defendant had not completed the contract to the extent its witnesses had estimated. The evidence before the trial court that the defendant had completed 97 percent of the construction primarily consisted of the testimony of Anthony Kolich[6] who was the secretary and treasurer of the defendant for eighteen years. Kolich stated that he, personally, never actually did any work on the plaintiffs' house but was periodically on the job site because he was running another job located a mile away. He also stated that the last time he had been at the plaintiffs' house was approximately eighteen days before the plaintiffs terminated the contract on September 28, 1973, and that on that day, he walked through and roughly inspected the

---

[6] There was also testimony by Madelyn Kolich who was the bookkeeper of the defendant. She testified that, in her opinion, the house was 95 percent completed. The defendant, however, has not alluded to this testimony as supporting its claim that it had completed 97 percent of the contract and the trial court did not mention this in either memoranda or special finding of facts.

premises. He did not make any notes while going through the house, but testified that, in his opinion, the house was 97 percent completed. The trial court found this testimony "unconvincing" and we cannot say that it was clearly erroneous for the trier of fact so to conclude.

Therefore, since we find no error in the court's failure to credit the evidence offered that the defendant had completed 97 percent of the contract at the time it was terminated, the court's conclusion that the defendant was due only $103,000 must stand. It necessarily follows that the trial court committed no error by failing to net the damage award of $17,152.65 to the plaintiffs against the $25,000 balance allegedly due the defendant under the contract.

We now address the defendant's third claim of error. It states that the trial court erred by inconsistently holding that the plaintiffs' evidence was insufficient to warrant a monetary award but that the plaintiffs were entitled to an award of $17,152.65 in damages for the defective roof and improperly installed drainpipes and also were not obligated to pay the remaining $25,000 balance on the contract. Since we have held that the defendant was not owed any balance on the contract because it failed to prove that it completed any more work on the contract than it was already paid for, we need not discuss that portion of this claim of error.

To understand fully this claim, we must put the trial court's allegedly inconsistent holdings in the context in which they were rendered.

After trial, the court issued its memorandum of decision and held that "[t]he evidence to establish

the monetary damage to the plaintiff from the defective roof and improperly installed drainpipe is sufficient to warrant damages in the amount of $17,152.65 plus interest. See Exhibits K, E, & W. Judgment may enter for this amount for the plaintiff." In its subsequent memorandum of decision in response to the defendant's motion to reopen, the court stated that "[e]vidence by the plaintiff on the other hand, while not sufficient to warrant a monetary amount of damage, clearly established that the house was not completed, landscaping was not done and it took until the following spring for the house to be granted a certificate of occupancy after the owner had obtained a roof contractor and other contractors to complete what the plaintiffs were supposed to have done in the first place. Consequently, the defendant's claim [that the court ignored the fact that a $25,000 balance was still due on the contract] is without merit as to that point." In addition, the trial court rendered twenty "special finding of facts" in which it stated in part: "20. While the damage caused the plaintiff by the failure of the defendant to complete the contract properly and in time was not measurable in money, the Court finds that the damage included the need to obtain other contractors to complete the work before a certificate of occupancy could be obtained in April of 1974." The defendant claims that these latter two findings are inconsistent with an award of damages to the plaintiffs. " 'A judgment rendered upon facts found will not be reversed or set aside unless some erroneous rule of law material to the case has been applied, or unless a conclusion has been reached, or an inference drawn, from a fact, many facts, or the facts found, which affects the judgment rendered in material degree and is legally

or logically inconsistent with that or those facts, or is so illogical or unsound, or so violative of the plain rules of reason, as to be unwarranted in law.' *Davis v. Margolis,* 107 Conn. 417, 422, 140 A. 823 [1928]; *Farkas* v. *Halliwell,* 136 Conn. 440, 443–44, 72 A.2d 648 [1950]." *Johnson* v. *Zoning Board of Appeals,* 156 Conn. 622, 624, 238 A.2d 413 (1968); see *Simmons* v. *Wetherall,* 180 Conn. 587, 589, 430 A.2d 1296 (1980); *Camputaro* v. *Stuart Hardwood Corporation,* 180 Conn. 545, 556, 429 A.2d 796 (1980); *Lovejoy* v. *van Emmenes,* 177 Conn. 287, 291, 416 A.2d 1192 (1979); *Horton* v. *Meskill,* 172 Conn. 615, 639, 376 A.2d 359 (1977). "A finding is to be read to uphold the judgment. Every reasonable presumption will be indulged in to support it." Maltbie, Conn. App. Proc. § 135, p. 166; see *Horton* v. *Meskill,* supra.

Upon a fair reading of the two memoranda and special finding of facts as a whole, it is clear that when the court stated that the plaintiffs' evidence was insufficient to warrant a monetary award, it was referring to the evidence of the numerous items specified in the plaintiffs' complaint *other* than the defective roof and improperly installed drainpipes. In its initial memorandum, the court, after describing the defective roof and improperly installed drainpipes, stated that "[w]hile the plaintiff claims additional items as a basis for his damage claim, the proof adduced as to the extent of that claim was not convincing." The court then proceeded to award $17,152.65 in damages for the roof and drainpipes. This demonstrates that the court found only part of the plaintiffs' evidence persuasive enough to support a monetary damage award.[7] By later stating

[7] The plaintiffs claimed a total of $100,000 in damages in their complaint.

that "the failure of the defendant to complete the contract properly and in time was not measurable in money," the court was merely reaffirming its belief that certain items of damages claimed in the complaint were not sufficiently established by the evidence to be the subject of a dollar amount of damages.[8] We do not find this conclusion to be inconsistent with the conclusion that damages should be awarded to the plaintiff for the roof and drainpipes. On the contrary, the court's memoranda and special findings of fact concerning this aspect of the damage award were reasonable and consistent.

We now turn to the defendant's final claim of error. The defendant argues that the trial court erred by totally rejecting its $21,831.63 counterclaim for "extras" performed on the plaintiffs' house. The defendant stated that there was evidence before the trial court, in the form of admissions by the plaintiffs, that at least *some* portion of the list of "extras" claimed to have been performed by the defendant actually were performed. Notwithstanding these admissions, the court found that "the

[8] This is borne out by certain remarks of the court made at the time of the arguments on June 4, 1980, on the defendant's motion to reopen the judgment (and as the result of which the court issued its second memorandum of decision and its "Special Finding of Facts.") At that time the court, in colloquy with counsel, said that it found the $17,152.65 "[f]rom the roof and drainpipe" and went on to state: "and I found there are other damages which were not sufficiently proved, so I could not find any monetary amount [for them]." "It was incumbent upon the plaintiff[s] to offer evidence sufficient to prove the damages claimed. See *Jones Destruction, Inc.* v. *Upjohn,* 161 Conn. 191, 199, 286 A.2d 308 [1971]." *Willametz* v. *Goldfeld,* 171 Conn. 622, 628, 370 A.2d 1089 (1976). For a case which suggests that if a plaintiff is not completely reimbursed for injuries allegedly suffered, it may very well be because he has failed to establish all his damages by a fair preponderance of the evidence. See *Dorne* v. *Williams,* 140 Conn. 193, 201, 98 A.2d 796 (1953).

testimony with respect to the extras consisted only of a list and an indication of what was expected plus, again, the testimony of defendants which the Court found unpersuasive. Therefore, the Court finds and had assumed in its prior memorandum that there was not sufficient evidence to warrant a finding that *any* extras had been performed. Therefore there is nothing due the defendants for them. . . ." (Emphasis added.)

We agree with the defendant that the trial court court erroneously rejected the defendant's claim for "extras" in toto. As part of the defendant's evidence at trial, it produced a letter which the plaintiffs received, through their attorney, from the defendant which detailed a list of "extras" which the defendant claimed had been performed at the plaintiffs' house. This letter also contained handwritten notations in the margin made by the plaintiff Delford W. Edens which indicated whether he approved or disapproved each "extra" on the list.[9]

---

[9] The list of "extras" containing the plaintiff's handwritten notations in the margins is set out below:

"KOLE CONSTRUCTION CORP.
STAMFORD, CONN. 06902

| 121 West Hill Road | 60 Simsbury Road |
| 348-8720 | 322-3641 |
| Frank Kolich | Anthony Kolich |

Mr. & Mrs. Delford Edens, Perkins Road, Greenwich, Connecticut The following is an up-to-date list of "extras" performed at the above address:

| | | |
|---|---|---|
| Top soil, 105 yards @ $8.50 per | $ 892.50 | No* |
| Blasting driveway | 1,050. | No* |
| Leaders and gutters | 528. | Part When Fixed?* |
| Kitchen and vanity extras | 2,145. | Part* |

It is clear that the defendant had, in fact, established that it performed at least part of this list of extras and was therefore entitled to a credit because the plaintiff Delford W. Edens admitted to that fact both by his written notations and his testimony

| | | |
|---|---|---|
| Double wall front portico | 350. | No Off-set* |
| Electrical extras (over 135 outlets) | 2,822. | Details* |
| (3) Valances | 750. | Time & Materials* |
| Veneer pantry door | 95. | Details* |
| Drains and labor | 450. | No* |
| Slate (tile) foyer and gallery | 565. | Details* |
| Blasting basement | 5,470. | No* |
| Door in basement | 75. | No* |
| Plumbing fixtures (toilets only) | 594.93 | Details* |
| Family room paneling extra, 12 sheets @ $4.00 per | 48. | ?$19.68* |
| Library paneling extra, 11 sheets @ $4.00 per | 44. | ?* |
| Sheetrock basement | 45. | No* |
| Book Cases | 1,250. | No* |
| Window muttons, purchase, install & paint | 550. | Part* |
| Cook top (Corning) | 275. | Details* |
| (2) Poles | 117.50 | No* |
| Paint Garage | 140. | Part* |
| Exterior doors (3) @ $20.00 | 60. | Details* |
| Front door hardware | 150. | Details* |
| Chimney for pump | 95. | No* |
| Gold shower door | 110. | Details* |
| Plumbing acc. (pop up) (4) faucets | 264. | Details* |
| Frame and trim above bar | 371. | No* |
| (4) faucets, gold | 126. | Details* |
| (2) shower controls, gold | 138. | Details* |

at trial.[10]   This persuasive evidence was directly contrary to the court's conclusion that "there was not sufficient evidence to warrant a finding that *any* extras had been performed." (Emphasis added.)

The cases which we have cited above are equally applicable here.   "As this court has many times stated, conclusions that violate 'law, logic or reason

| | | |
|---|---|---|
| Pump for footing drains | 114. | No-Paid Ans* |
| ¾ well pump instead of ½ horse | 96. | No* |
| Install mail box | 25. | "Gratis"* |
| Intercom and chimes | 535. | Details* |
| All rdwood cornish instead of pine | 171.70 | No* |
| Cant strips for gutters | 220. | No* |
| Lights in closet | 140. | Details* |
| Dimmers in Dining and Family Rooms | 34. | No* |
| Retain banks in driveway | 460. | No* |
| Labor for installing front door hardware | 45. | No* |
| Soffett lighting | 120. | Details* |
| Pocket doors (2) | 300. | Details* |

$21,831.63

interest
Plus 12% of unpaid balance
Plus 15% profit on extras

Frank Kolich"

* Handwritten notes by Plaintiff Delford Edens

[10] A further indication of the nature of the plaintiff's admissions here may be gleaned from the following statement of his attorney made during cross-examination on the interpretation of the plaintiff's handwritten notations when he said:   "Mr. Cahill:   There were certain portions of these extras that were done and that should be used as a valid offset against the items, against the money that he had to take out of his own pocket to make a lot of items that were in the house that were wrong right."

or are inconsistent with the subordinate facts' cannot stand." *Delfino* v. *Vealencis,* 181 Conn. 533, 543, 436 A.2d 27 (1980). Since the trial court's conclusion that the defendant had not performed *any* of the "extras" is inconsistent with the underlying facts, we must remand for a new hearing on this issue alone. See *Mercanti* v. *Persson,* 160 Conn. 468, 477, 280 A.2d 137 (1971); *City Trust Co.* v. *Jennings,* 158 Conn. 173, 178–79, 258 A.2d 86 (1969).

There is error in part, the judgment is set aside and the case is remanded for a hearing only on the issue of the "extras" as outlined in this opinion.

In this opinion the other judges concurred.