[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this case, the plaintiff's complaint against Westfield Incorporated and Westland Properties N.V. is framed in four counts.
The first count alleges a balance due on a contract, for breach of contract and wrongful refusal to permit the plaintiff to continue its work.
The second count alleges a claim for the reasonable value of work, labor, services, and materials furnished in the amount of $88,057.95.
The third count alleges unjust enrichment and the fourth count alleges a violation of CUTPA (C.G.S. 42-110b).
After the plaintiff rested the court dismissed all counts against Westfield Incorporated and the third and fourth counts against Westland Properties N.V.
There remains the first and second counts against Westland Properties N.V.
The evidence revealed that the plaintiff, James Hines d/b/a Hines Nursery and the defendant Westland Properties N.V., acting through its agent Westfield Incorporated, entered into a contract on January 16, 1987 for extensive landscaping on an expanded portion of its shopping park in Trumbull, Connecticut. Before the actual execution of the contract the parties had agreed that the plaintiff would supply and plant 117 hemlock trees, at an agreed price of $64,350.00. The hemlock trees were planted in December, 1986, one month before the execution of the contract. The executed contract further provided for an option for the remainder of the landscaping work for the addition CT Page 3736 amount of $364,750.00. Although the December planting of the hemlocks was performed without the providing of a performance bond and labor and materials payment bond as required by the written contract of January 16, 1987, the plaintiff was told that the option work would not be awarded to him without the required bond. There is in evidence as Exhibit 9, a document purporting to be a performance bond, dated March 13, 1987, binding as surety, The Hartford Accident and Indemnity Company, for the faithful performance of the plaintiff's obligations under the contract with the defendants. Thereafter, the plaintiff was awarded the option work under the contract.
It would serve no useful purpose to recount the details of what occurred thereafter. The factual situation is adequately outlined in the defendant's brief. Suffice it to say that it became painfully apparent that the plaintiff was "in over his head." There is evidence that the plaintiff was unable to supply the manpower, materials or finances to keep up with the required progress of the work. There is additional evidence that much of the plantings had either died or was not thriving as should be. During the months of April, May, and June 1987, the defendants complained of the foregoing. There were meetings between the parties in an attempt to work out the problems and agree on scheduling for the completion of the work, but the plaintiff was not able to comply with such time schedules. Finally, in June of 1987, the plaintiff was notified that he was in default of the contract and that contact with the bonding company was contemplated, unless the plaintiff could show that such a step was unjustified, at a meeting called for such express purpose on June 25, 1987, a meeting which the plaintiff did not attend. When the bond was called, it was first discovered that the bond was a forgery, and had not been authorized by the Hartford Accident and Indemnity Company.
The court cannot find that the plaintiff conspired in such forgery. The entire situation surrounding the procurement of the bond can only be described as bizarre and needs no additional detail to that which is included in the defendants' brief. The kindest observation which the court can add is best described by the plaintiff himself when he testified, "What are you trying to say that I was a stupid kid? I was a stupid kid. I made a mistake."
As the result of the foregoing, by letter dated July 16, 1987, the defendants notified the plaintiff that his employment under the contract of January 16, 1987, was terminated effective July 24, 1987 because of substantial violations of the contract documents, including:
1. Failure to furnish the bonds required under the contract CT Page 3737 documents.
2. Persistant failure to carry out the contract work.
3. Failure to correct defective work.
 Said letter further notified the plaintiff that no further payments to the plaintiff would be made until the contract work was completed by a substitute contractor in order to determine what losses were sustained as a result of the plaintiff's defaults under the contract.
The first count of the plaintiff's complaint alleges a balance due on the contract in the amount of $290,930.65. This amount is arrived at by subtracting from the entire contract price of $429,100.00 ($64,350.00 for planting of 117 hemlocks plus $364,750.00 for the option remainder work), the amount of payments made by the defendants in the sum of $138,169.35. (Actually, the evidence disclosed that defendants' payments totalled $137,857.35). The plaintiff bases his claim in the first count on the ground that he had performed all work and conditions on his part to be performed until July 24, 1987 when the defendants breached the c, tract by refusing a progress payment and refusing to permit the plaintiff to continue his work. In order to prevail on such a claim however, the plaintiff must prove substantial compliance with the terms of the contract and such is ordinarily a question of fact for the trier to determine. Edens v. Kole Construction Co., 188 Conn. 489,494. The court is unable to find substantial performance in this case. There is the incident pertaining to the bond. There is credible evidence of lack of manpower and materials, failure to water plants, failure of approximately 25% of the plantings to survive and serious lagging in all phases of the work.
Plaintiff's counsel apparently recognized this difficulty since, some two weeks after the evidence in the case had been completed, a request for leave to award the complaint was filed, abandoning the original claim for the entire balance under the contract, and seeking only the amount of $85,537.68 for actual invoices presented for work done to the date the defendants gave notice of termination of the contract.
The court seriously doubts, considering its findings and the claims of the defendants under their counterclaim, that the plaintiff would prevail even under the amended complaint. Apart from such, however, while "our courts have pursued a liberal policy in allowing amendments" such requests lie in the sound discretion of the court. Wesson v. F.M. Heritage Company, 174 Conn. 236, CT Page 3738 239. This request came two weeks after the evidence had been completed and the court was awaiting briefs. The amendment would change the entire theory advanced in the first count, comes much too late, and must be denied.
Under the second count, the plaintiff attempted to present a claim in quantum meruit for the reasonable value of work labor and services and materials furnished by the plaintiff. Under our cases, such a form "of the equitable remedy for restitution" may be available "where no express contract has been entered into by the parties." Burns v. Koellmer, 11 Conn. App. 375,385, see also, O'Keefe v. Bassett, 132 Conn. 659, 663. "Quantum meruit is based on an implied contract and such can only exist where there is no express one" Collins v. Lewis, 111 Conn. 299,304. Here, there is no question but the parties relied on an express contract.
The defendants have filed numerous special defenses, some of which, such as waiver, estoppel, failure of consideration have apparently been abandoned. The special defenses of breach of contract, progress payments, false and negligent representations, however, are still being pursued zealously.
In addition to their special defenses, the defendants have filed a counterclaim consisting of five counts, claiming damages for amounts that had to be paid to other parties to complete the required work, damages for the alleged false representations and, finally, damages under CUTPA, C.G.S. 42-110b.
The court finds that the plaintiff has materially breached the contract in the respects enumerated herein; specifically, his failure to provide necessary workmen, his inability to deliver materials and supplies, the failure of a substantial number of his plantings, his inability to maintain time schedules in the progress of the work, and his failure to furnish the required bond. As a result, the defendants were required to expend sums of money to engage substitute contractors to complete the work under the contractor. In addition to payments made to the plaintiff in the amount of $137,857.35, the defendants paid $7,578.00 to Steve Price Tree Expert to perform watering operations neglected by the plaintiff and $382,425.00 to Gatz Landscaping, to replace plantings which died and complete the work under the contract, or a total of $527,860.35, which the court finds to have been reasonable for the services rendered. Thus, because of the plaintiff's breach, the defendants were required to pay the sum of $98,760.35 in excess of the agreed contract price between the parties, namely, $429,100.00.
The measure of damages in cases such as this should be in CT Page 3739 an amount that would leave the defendants in the same position as it would have enjoyed had the plaintiff fully performed, and, in this case, the cost of completion or correction by a third party is the proper measure of damages. Brookfield v. Greenridge, 177 Conn. 527, 537.
With respect to the claims of false representations surrounding the bond incident, while the plaintiff may have been negligent in the procurement of the performance bond, any such negligence did not reach the point of deliberate, false and intentional misrepresentation. The plaintiff was naive, and in his own words, "stupid". The court is unable to reach the conclusion that the plaintiff's conduct reached the level of intentional deceit or that he knew that the bond was forged.
With respect to the claim of CUTPA violations, the court feels compelled to observe that litigants are unreasonably resorting to allegations of CUTPA violations in order to provide additional clout to their complaints where such is not warranted.
"The special relief afforded by CUTPA requires, in a private dispute, the assertion of a public interest that is `specific and substantial' (citations omitted). "Under guiding federal law, allegedly deceptive acts or practices which arise out of a private contraversy are actionable only if the acts or practices have a potential effect on the general consuming public" (citations omitted). "The private action authorized by CUTPA, General Statutes, 42-110g is intended to provide additional sanctions to deter unfair trade practices that injure the general consuming public rather than to provide additional remedies for the redress of entirely private wrongs." Ivey, Barnum O'Mara v. Indian Harbor Properties, Inc., 190 Conn. 528,540. The court can find no such specific or substantial public interest violated by the defendant's conduct or that such conduct had a potential effect on the general consuming public.
Finally, the court takes note of further claims advanced in the defendants counterclaim that, of interest, double damages under C.G.S. 52-565, punitive damages and reasonable attorney's fees, pursuant to C.G.S. 42-110g.
With respect to the claim for interest, "the real question in each case is whether the detention of the money is or is not wrongful under the circumstances" Cecio Brothers, Inc. v. Feldmann, 161 Conn. 265, 275. "The allowance of interest as an element of damages is, thus, primarily an equitable determination and a matter lying within the discretion of the trial court." Bertozzi v. McCarthy, 164 Conn. 463, 467. This is not a case in which the defendant's counterclaim is based on CT Page 3740 an express contract to perform the work the defendants claim had to be performed to complete the job. The issues were hotly contested, and, on this basis the court finds that the detention of money was not wrongful.
The claim for double damages under C.G.S. 52-565 has already been discussed and the court will simply reiterate that it is unable to find that the plaintiff forged or knowingly participated in a forgery.
The court can find no basis for an award of attorney's fees or punitive damages. As a general proposition, each litigant must bear his own expense of litigation, unless some statute or contract provides otherwise. Considering the court's view of the applicability of CUTPA to this matter, such is not the case here.
Judgment may enter in favor of the defendants on the plaintiff's case.
Judgment may further enter in favor of the defendants on the defendant's counterclaim in the amount of $98,760.35 damages, with costs, but without interest or attorney's fees.