[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the Court upon the Plaintiff, Pisani Construction, Incorporated's, complaint to foreclose upon a mechanics lien.
The Plaintiff asserts that it has furnished material and rendered labor and construction of certain improvements, to wit, a pre-engineered metal building addition to an existing building located upon the real property of the Defendant, Adolf W. Krueger. Under the specifications of the agreement between the parties, the new addition was to share a common wall with the said existing building.
The Plaintiff further asserts that it commenced the performance of its work on behalf of the defendant on July 2, 1996 and completed said work on January 28, 1997. The Plaintiff claims that although the Defendant has made certain payments to the Plaintiff on account of said agreement, there is a balance due to the Plaintiff in the amount of FOURTEEN THOUSAND TWO HUNDRED FIFTY-TWO and 00/100 ($14,252.00) DOLLARS, plus interest. To secure said amount, on April 18, 1997. the Plaintiff caused a Certificate of Mechanic's Lien to be a executed and recorded on the Land Records of the Town of Bethel in Volume 0624 at Page 0088. In this action, the Plaintiff claims a foreclosure of the said Mechanic's Lien.
The Defendant has answered by denying that there is any balance due from the Defendant to the Plaintiff. The Defendant has further asserted a Special Defense claiming that the Plaintiff's claim is barred by the doctrine of equitable estoppel in that "it did not adequately, correctly and in accordance with industry standards construct the building that was the subject of the agreement between the parties." The Defendant filed a Second Special Defense asserting that the Plaintiff's claim is further barred by the doctrine of unclean hands in that the Plaintiff "employed the services of inexperienced erection personnel in the construction of the building that was the subject of the agreement between the parties in derogation of the terms of that agreement."
The Defendant has also filed a two count Counterclaim asserting in Count One thereof that the Plaintiff has breached its contract with the Defendant in thirteen different ways, primarily by failing to properly CT Page 11220 construct the new building and by failing to properly align the new building with the existing building. The Second Count of said Counterclaim asserts that Plaintiff has breached its implied covenant of good faith and fair dealing with the Defendant by, inter alia, failing to "address, adequately and meaningfully, the patent defects in the building . . ." On its Counterclaim, the Defendant claims monetary damages, punitive damages and costs of suit.
The matter was tried to the Court (Carroll, J) and post-trial briefs were thereafter filed by the Plaintiff on May 26, 2000 and by the Defendant on July 13, 2000. By stipulation before the Court, the parties waived the applicability of Section 51-183b of the Connecticut General Statutes thereby until such time as the Court received the latest filed post-trial brief.
After consideration of all of the evidence that has been submitted in this matter, after careful assessment of the credibility of all of the witnesses who have testified in this matter and after consideration of the actual claims of the parties as asserted in their respective pleadings, the Court finds the following facts:
1. On April 17, 1996, the Plaintiff and the Defendant entered into an agreement (Plaintiff's Exhibit #1) under the terms of which the Plaintiff agreed to erect, as an addition to an existing structure on the Defendant's site, a pre-engineered metal building. Under the terms of the agreement between the parties, the existing structure and the new building were to share a common wall and the frames and wall panel heights of the new building were to match with the existing structure.
2. After the agreement was signed, the Defendant made an initial payment to the Plaintiff in the amount of $21,500.00, the Plaintiff took field measurements and ordered the materials necessary to construct the building. The materials were delivered in July of 1996 and after the resolution of certain zoning and building permit issues, construction began in or about November of 1996.
3. Under the terms of the agreement, the Defendant was to complete certain site preparation work including the responsibility to provide the concrete foundation piers and install anchor bolts in accordance with the plans provided by the Plaintiff. The said agreement further provided that the Plaintiff reserved the right to inspect the site preparation work completed by the Defendant and "back charge" the Defendant for any additional work needed to bring the site up to the appropriate condition.
4. The Defendant completed the site preparation work by installing the CT Page 11221 anchor bolts in in the concrete foundation piers in accordance with the drawings and plans provided to the Defendant by the Plaintiff. Erection of the new building was completed in or about January of 1997.
5. Shortly before the completion of the new building it was determined that the roof line of the new building was (and is) three to three and a half inches higher than the roof line of the existing structure.
6. While the Plaintiff did complete certain inspections of the site prior to commencement of the construction of the new building neither the Plaintiff nor the Plaintiff's sub-contracted constructors ever completed any site inspection of the site preparation work completed by the Defendant to determine if the height of the newly constructed building would match the height of the existing structure. Construction had already commenced when it was discovered that there was a three to three and a half inch discrepancy in the roof lines of the two buildings.
7. Because the building as constructed was merely the erection of a pre-engineered metal building, there was nothing that could be done by the constructors to simply "make up the difference" at the top of the building.
8. Although the Plaintiff did not see the height discrepancy as a "major problem", the Defendant did consider the discrepancy to be a major problem both aesthetically and functionally.
9. When the Plaintiff discovered the elevation problem the Plaintiff did not offer the Defendant any possible resolution to the problem. Rather the Plaintiff simply completed its construction of the building and the ridgecaps of the two buildings were "field-modified" so as to blend the two roof lines together.
10. The windows on the new building did not line up with the windows on the existing building nor did the gutters on the two buildings line up correctly. The misalignment of the gutters resulted in an icing problem for the Defendant this past winter.
11. Prior to the commencement of the construction of the new building the Defendant asked the Plaintiff to check both the height and the placement of the anchor bolts on the concrete foundation piers. Although the Plaintiff did take certain field measurements he never took any measurements that would have disclosed, prior to the commencement of construction, that the roof lines of the two buildings would not match up upon the completion of the construction.
12. The construction of the new building in this matter commenced, CT Page 11222 proceeded and concluded without any apparent concern by the Plaintiff that the completed new building height would match the existing building height.
Even to one unschooled in construction principles, as is pointed out in the Defendant's post trial memorandum, at the time of construction of the existing older building, as a stand-alone edifice, there was no need to be concerned with the exact height of the completed building. However, when attempting to add a building to an existing building with the contract specification that the two buildings will share a common wall and that the "frames and wall panel heights (of the new building) are to match with existing (building),", there is an obvious need to be concerned with the exact height of the completed new building.
If the appropriate field measurements were taken by the Plaintiff prior to the commencement of construction, the problems that resulted therefrom could have been avoided. The facts as found by the Court in this matter disclose that the appropriate field measurements were not taken by the plaintiff prior to commencement of construction of the new building.
In his post-trial memorandum, the Defendant argues that because the Plaintiff did not "substantially perform" under the contract it could not prevail on a legal cause of action for the amount alleged to be due under the contract and therefore could not prevail on an equitable cause of action to achieve the same result.
In support of this position the Defendant has cited the case ofArgentinis v. Gould, 219 Conn. 151 (1991) wherein the Supreme Court held:
 Generally, when a builder breaches a bilateral construction contract by an unexcused failure to render substantial performance, he cannot maintain an action on the contract to recover the unpaid balances of the contract price because substantial performance, a constructive condition of the owner's duty to pay the balance, has not been satisfied. See 2 Restatement (Second), Contracts 237, comment (d); 3A A. Corbin, Contracts (1964) 701, 710; see generally Lach v. Cahill, 138 Conn. 418, 421, 85 A.2d 481
(1951); Sheketoff v. Prevedine, 133 Conn. 389, 392-93, 51 A.2d 922 (1947). The balance of the contract price, therefore, is not "due" the builder. See 3A A. Corbin, supra, 701.
The Court further noted that: CT Page 11223
 Edens (Edens v. Kole Construction Co., 188 Conn. 489
(1982) remains viable inasmuch as it stands for this proposition, and the Appellate Court, relying upon Edens, properly concluded that Gould's failure of substantial performance precluded him from prevailing in the foreclosure action.
Whether a building contract has been "substantially performed" is a question of fact involving an inquiry into the totality of the facts and circumstances surrounding performance. In the instant matter there is no question that the erection of the new building has been completed and that the said new building is being utilized by the Defendant. The mere fact though that the building has been completed and is being used by the Defendant does not necessarily mean that the agreement or contract between the parties has been "substantially performed".
The Court has already found, that a key component of the contract between the parties was the fact that the frames and wall panel heights of the new building were to match with the existing structure. There is similarly no question that the frames, wall panel heights and the roof lines of the two structures did not and do not match. Based upon the foregoing facts, the Court finds that the Plaintiff has not substantially performed under the terms of the agreement and therefore cannot prevail in the foreclosure action. The Plaintiff's Complaint in this matter is a one count Complaint seeking only a foreclosure of its mechanics lien. No other counts seeking any other relief have been asserted by the Plaintiff.
The Court further finds that the Defendant has failed to submit any credible evidence to the Court upon which the Court could base any finding or award of damages under the Defendant's two count counterclaim.
Judgment may accordingly enter, without costs, for the Defendant on the Plaintiff's Complaint and, without costs, for the Plaintiff on the Defendant's Counterclaim.
BY THE COURT
CARROLL, J.