TAKIS ARGENTINIS *v.* PAUL L. GOULD ET AL.

PAUL L. GOULD *v.* P. A. ARGENTINIS ET AL.
(8454)

DUPONT, C. J., SPALLONE and DALY, Js.

Argued May 7—decision released August 28, 1990

*Eugene E. Cederbaum,* for the appellants (defendants in the first case, plaintiff in the second case).

*Daniel B. Glass,* for the appellees (plaintiff in the first case, defendants in the second case).

SPALLONE, J. This is an appeal from the judgments rendered on consolidated actions. In the first captioned action, Takis Argentinis sought damages for breach of a construction contract and of an express warranty by the defendants, Paul L. Gould and Paul L. Gould, Inc. In the second captioned action, Gould sought to foreclose a purchase money mortgage granted by Argentinis and his wife, the defendants in that action, P. A. (Takis) Argentinis and his wife, Ourania Argentinis, securing the final payment due on the contract.[1]

After a trial to an attorney trial referee, the reported findings were accepted and judgments rendered for

---

[1] We will refer in this opinion to P.A. (Takis) Argentinis and Ourania Argentinis as Argentinis.

Argentinis on both the contract action and on the fore-
closure action. On appeal, Gould challenges the court's
acceptance of the trial referee's findings (1) that Argen-
tinis was entitled to both compensatory damages for
breach of contract and a judgment in the foreclosure
action, (2) that Gould had not substantially performed
under the terms of the construction contract, (3) that
Gould had the burden to prove the soundness of the
structural plans, and (4) that Gould was personally lia-
ble for contract damages. Gould also claims that the
court should not have accepted findings that did not
comply with the rules of practice. We affirm the judg-
ments.

The evidence introduced at trial supports the follow-
ing facts. In November, 1980, Gould individually and
as president of Paul L. Gould, Inc., entered into a con-
tract with Argentinis for the construction of a custom
designed house in Fairfield. The agreement incorpo-
rated the house plans and specifications prepared for
Argentinis by professional architects. The contract con-
tained Gould's various express warranties, including
a warranty against water leakage into the premises for
one year after closing. The house was to be ready for
occupation by May 1, 1981.

The closing took place in April, 1981. Gould took from
Argentinis a purchase money mortgage for the final
$50,000 of the total sales price of $344,000. Although
a certificate of occupancy had been issued, the Argen-
tinis family was unable to occupy the house as sched-
uled because some forty to fifty items of construction
remained unfinished. After further negotiation, the par-
ties reached a supplemental agreement modifying the
terms of the mortgage. Argentinis received a credit of
$4000 toward the final $50,000 due. The parties agreed
to a modified promissory note and mortgage for

$43,000 and a cash payment of $3000 which was to be released on the completion of those construction items recognized to be unsatisfactory.

The Argentinis family moved into the house in early July, 1981, and the cash payment and documents were released to Gould from escrow. Some items due for completion later that month or "within a reasonable period of time" had not yet been performed. Of principal concern to Argentinis was the lack of water pressure in the house and the contaminated well water. It was subsequently discovered that the well had been placed, without a permit, too near a septic system and a sewer drain. Argentinis was without potable tap water for three months. Structural defects soon became manifest. Particularly, the basement was vulnerable to flooding during rains. Storm flooding occurred within the warranty period, again in June, 1982, and twice more in April, 1983, causing substantial damage to personal and real property.

Argentinis made repeated demands upon Gould within the warranty period to rectify the problems of the improperly sited well, the flooding basement and numerous other significant deficiencies. Gould refused to repair the defects unless given an unconditional release for all defects and the right to determine those defects for which he was responsible. Argentinis refused to give this release, refused to make payments on the outstanding debt, and brought suit against Gould for breach of contract and of express warranties. Gould sought to foreclose the $43,000 mortgage.

The consolidated actions were tried before an attorney trial referee who found for Argentinis on the contract claims, awarding $73,068.75 in damages. The referee also found for Argentinis on Gould's foreclosure action, ruling that Gould was not entitled to the final contract payment because he had not substantially com-

pleted construction. The trial court accepted the referee's report in September, 1989, and rendered judgments consistent with the report. This appeal followed.

## I

Gould first challenges the referee's findings that Argentinis was entitled both to compensatory damages for breach of contract and to judgment in the foreclosure action. Gould argues that the balance due on the mortgage and promissory note should have been set off against the damage award. He asserts that in finding for Argentinis on both claims, the referee awarded Argentinis a double recovery of more than $154,600; $73,068.75 in breach of contract damages and $43,000, plus interest, owed on the promissory note.

In refusing to set off the balance due under the contract against the damage award, the referee relied on *Edens* v. *Kole Construction Co.,* 188 Conn. 489, 450 A.2d 1161 (1982). In *Edens,* the plaintiff sued for breach of a construction contract and the defendant counterclaimed for the unpaid portion of the purchase price and for foreclosure of a mechanic's lien. Id., 491. Our Supreme Court approved the trial court's treatment of these claims as distinct and separate issues. In *Edens,* as here, no challenge was mounted to the determination that the builder had breached the contract or to the calculation of the resulting damages. Id., 493. The builder, as here, challenged only the court's failure to find that he was entitled to the total purchase price. Id. That issue turned wholly on whether the builder had proved his claim to the balance due by virtue of his having substantially performed the contract. Id. The *Edens* court, finding no substantial performance, ruled that the builder was not entitled to any amount over that already paid and thus awarded the buyer contract damages and also forgave the balance due. Id., 496.

Contrary to Gould's first claim, *Edens* makes it clear that it is not per se improper both to award damages and to forgive the outstanding debt. Setoff is proper only if the contract has been substantially performed; the buyer will not be forced to pay for value not received. Id.

## II

Gould next claims that the referee's conclusion that construction was not substantially completed is against the weight of evidence. He states that Argentinis' architects had performed inspections as the work progressed and had approved the materials and workmanship. The town building inspector had found that the project met all but one minor code requirement and had issued a valid certificate of occupancy. We do not agree that this evidence forces a conclusion that Gould substantially performed under the terms of the contract.

A party cannot recover on a contract unless he has performed his obligations or has a legal excuse for not performing. *Mayfair Roofing & Renovating Co.* v. *Ramco Technologies, Inc.*, 18 Conn. App. 682, 686, 560 A.2d 464 (1989). Substantial performance contemplates the performance of all items of a building contract except for minor details, those easily remedied by minor expenditures. *Rosnick* v. *Aetna Sheet Metal Works, Inc.*, 146 Conn. 565, 568, 153 A.2d 435 (1959). Whether a building contractor has met this standard is ordinarily a question of fact for the trier. *Edens* v. *Kole Construction Co.*, supra. Our review of this claim is therefore limited to a determination of whether, based on the record, the referee's finding of no substantial performance is clearly erroneous. *Howie's Painting Service, Inc.* v. *Ferreria,* 12 Conn. App. 583, 584, 532 A.2d 1318 (1987).

The record here indicates that the referee took testimony and evidence over a period of twenty-four days. On the basis of this evidence, the referee expressly listed twelve specific construction conditions that were not in conformity with the terms of the contract, including the illegally installed contaminated well, the substandard basement construction, the defective heating system and the defective siding. These conditions were found to have been caused by Gould's poor workmanship or inadequate materials, and the referee calculated the cost to Argentinis for the repair or replacement of defective items as a measure of contract damages.

Having found that Gould failed to deliver under the terms of the contract, the referee went on to distinguish between the breach of contract and the foreclosure actions. He found that Argentinis was justified in refusing to pay the balance due on the note, stating that Gould had failed to install adequately or to complete numerous items required by the contract, particularly the heat pumps, air conditioning units and a fireplace stove. "In short, [Gould] failed to substantially perform this contract." This conclusion is fully supported in the record, replete with evidence of Gould's shoddy work and broken promises. We cannot say that the referee reached a mistaken conclusion when the damages resulting from Gould's substandard performance total more than 20 percent of the purchase price.

Because Gould did not substantially perform under the contract, the referee properly refused to set off the damage award against the mortgage debt. As in *Edens,* Gould was not owed the balance due on the contract because he failed to prove that he had completed any more work than that for which he already had been paid. We find no double recovery for Argentinis. He had paid for the work to the extent actually completed and was owed the reasonable cost of restoring this work to the condition for which he had contracted.

## III

In his third claim, Gould argues that he was improperly held responsible for damages resulting from Argentinis' faulty house specifications and, further, improperly allocated the burden of proving these plans to be structurally sound "by compelling evidence." The record does not support either argument.

Gould asserts that Argentinis' house plans and specifications were not prepared by a licensed architect and that they were unsound and defective when delivered to him. A contractor is not responsible for damages resulting from defective plans or specifications supplied by a contractee. *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 656, 345 A.2d 550 (1974); *D'Esopo & Co.* v. *Bleiler,* 13 Conn. App. 621, 624, 538 A.2d 719 (1988). This argument overlooks the fact that the referee weighed the testimony given by the parties' expert architects, and found that the plans supplied by Argentinis were structurally sufficient. The referee expressly found that the dwelling's deficiencies were not attributable to any fault in the plans, but rather to poor workmanship and materials. We will not encroach on the referee's broad discretion to try facts and to pass upon the credibility of witnesses. *Ruwet-Sibley Equipment Corporation* v. *Stebbins,* 15 Conn. App. 21, 25, 542 A.2d 1171, cert. dismissed, 209 Conn. 806, 548 A.2d 437 (1988); *Essex Savings Bank* v. *Leeker,* 2 Conn. App. 98, 102, 476 A.2d 1071 (1984).

Moreover, we do not agree that the referee shifted the burden to Gould of demonstrating the soundness of the plans. Gould had raised the adequacy of the plans prepared by Argentinis' architects as an issue in his general denial to Argentinis' breach of contract claims. A general denial does not place any burden on the denier; *Eastern Consolidators, Inc.* v. *W. L. McAviney*

*Properties, Inc.,* 159 Conn. 510, 510–11, 271 A.2d 59 (1970); and the burden is properly placed on the party seeking recovery. *Lukas* v. *New Haven,* 184 Conn. 205, 211, 439 A.2d 949 (1981). After evaluating the testimony and evidence of Argentinis' architects, the referee expressly noted that the Argentinises "sustained their burden of proof by demonstrating through credible testimony and evidence that their architect, Mr. Valus, drew plans and specifications that were structurally sufficient." The referee found that Gould "failed to offer compelling evidence to rebut or weaken the plaintiffs' witnesses on this issue."

It is clear that the referee properly placed the burden of proof upon Argentinis, not Gould, to prove that the plans and specifications were adequately drawn. The referee did not shift the burden but merely remarked that Gould did not present "compelling evidence" sufficient to undermine and rebut Argentinis' witnesses. Because the referee believed the testimony of Argentinis' architects that the house plans were not the source of the house defects, he properly refused to excuse Gould's deficient performance on that ground.

## IV

In his fourth claim, Gould contends that judgment should not have been rendered against him as an individual. This claim is without substance. Argentinis brought a breach of contract action against Gould both individually and in his capacity as president of Paul L. Gould, Inc. In his answer to Argentinis' complaint, Gould stated that "[t]he defendant, Paul Gould, hereby answers the Revised Complaint of the plaintiff dated July 7, 1983 as follows: (1) The defendant admits that on November 13, 1980, the parties executed an agreement whereby the defendant agreed to erect a residence on Winton Road . . . ."

Gould's answer to the complaint in his personal capacity is a judicial admission of personal liability and is conclusive on him. See Practice Book § 160; *Jones Destruction, Inc.* v. *Upjohn*, 161 Conn. 191, 199, 286 A.2d 308 (1971); *DelVecchio* v. *DelVecchio*, 146 Conn. 188, 191, 148 A.2d 554 (1959). Gould signed the construction contract in his own name. Cf. *Northeast Gunite & Grouting Corporation* v. *Chapman*, 20 Conn. App. 201, 204, 565 A.2d 256 (1989). Gould was individually named in Argentinis' action, and he appeared and defended without ever seeking to have the action dismissed as to him as an individual. At no time during trial did he seek to withdraw, modify or explain his admission. See *West Haven Sound Development Corporation* v. *West Haven*, 201 Conn. 305, 312, 514 A.2d 734 (1986). Having judicially admitted that he was a party to the contract, Gould cannot now complain about being held individually responsible for the damages flowing from his breach of the construction contract.

V

After trial, Gould filed thirty-four pages of proposed findings of fact for the referee's consideration. Gould's final claim is that the trial court should not have accepted findings that did not comply with Practice Book § 435 because the referee failed to consider or reference any of these proposed findings in his report. The record indicates otherwise.

Practice Book § 435 permits a party to request that an attorney trial referee "make a finding of subordinate facts [and to submit] a statement of the facts, or rulings, or claims, he desires the [referee] to incorporate in the report." There is, however, no authority that requires a referee specifically to consider each proposed finding of fact or to include it in the report. Nevertheless, the referee's report indicates that he was cognizant of Gould's requests and expressly "chose not to

address each and every proposed finding since it was felt that each was adequately dealt with in the body of the memorandum." He considered Gould's proposed findings to be "surplusage," extraneous and "so much fodder to clutter the findings." Pursuant to Practice Book § 434, the referee stated only "the ultimate facts found." Those facts and conclusions were sufficient to support the judgments rendered by the court.

We agree with the referee that Gould's proposed findings amount to a request to substitute his version of the facts for the referee's own. Gould's claim is no more than a sweeping attack on the referee's factual findings. "Although we are loath to repeat ourselves, we must again declare our disapproval of such claims." *Howie's Painting Service, Inc.* v. *Ferreria,* supra. We will not retry the case.

The judgments are affirmed.

In this opinion the other judges concurred.