[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action to foreclose a mortgage given to secure a promissory note for $28,500 payable to the plaintiff, John Christiano, Trustee, and executed by the defendant Robert Bonesteel. The mortgage pertains to property located at 274 Belltown Road in Stamford, title to which was in the joint names of the defendant Bonesteel and his then wife Sharilyn Bonesteel. Although the promissory note and mortgage, both of which were dated June 20, 1989, purportedly bore the signatures of both Bonesteels, it is conceded by all concerned that Mr. Bonesteel brought a female impostor to the closing and that Sharilyn Bonesteel did not sign the note and the mortgage. The plaintiff is not attempting to foreclose Mrs. Bonesteel's interest in the subject premises or to hold her liable on the note and mortgage.
The case was referred to the attorney trial referee program General Statutes 52-434(a)(4), Practice Book 428 CT Page 7163 et seq., and the attorney trial referee, Melvin J. Silverman, Esq., recommended that judgment enter in favor of the plaintiff foreclosing defendant Robert Bonesteel's one-half interest in the mortgaged premises. He also determined that as of November 14, 1990,; defendant Bonesteel owed the plaintiff $28,500 of principal and $8517.24 interest, with a per diem of $15.4356. The referee also recommended a fee of $21,468.75 for plaintiff's attorney, as provided in the note, based on an hourly rate of $125. According to the referee, a great deal of time had to be spent on this case because of its complexity, including the special defenses interposed by Mrs. Bonesteel and an analysis of the effect of the use of an impostor.
In his report the referee made a number of findings of fact, including: (i) that the loan in question was secured by a second mortgage, as both Bonesteels had given a first mortgage to The Travelers Mortgage Services; (ii) that the plaintiff was a secondary mortgage lender licensed in this state; (iii) that the effective annual interest rate of the loan was 23.01%; (iv) that although the loan application did not indicate whether the loan was a commercial or a consumer loan, the check was made payable to Robert Bonesteel's corporation, Connecticut Heat Pump Systems of Stamford, Inc., and was deposited into that company's bank account; and (v) that the female impostor signed Sharilyn Bonesteel's name to the note and mortgage at the closing.
On the basis of these findings of fact the referee made several conclusions as follows: (i) that the loan was a commercial and not a consumer loan; (ii) that Robert Bonesteel's interest as a joint tenant could be foreclosed; (iii) that Sharilyn Bonesteel's interest in the real estate was not affected or encumbered by the actions of her husband and the female impostor; (iv) that Sharilyn Bonesteel's acquiring of Robert Bonesteel's interest in the premises in 1990 as a result of a separation agreement and decree of dissolution of their marriage caused her to acquire his interest subject to his mortgage in 1989 to the plaintiff; (v) that although both the plaintiff and his attorney were careless in permitting the impostor to sign the note and mortgage, they did not commit fraud against the defendant Sharilyn Bonesteel; (vi) that the loan was not usurious based on General Statutes 37-9 (3) exempting bona fide mortgages on real estate from the usury laws; (vii) that aside from the issue of usury, the loan was not unconscionable because Robert Bonesteel was a "shaky" credit risk, and that although the annual percentage rate was 23.01%, the loan amortization rate was 19.5% which) the referee pointed out, was "only slightly higher than that CT Page 7164 authorized for used car sales;" (viii) that Connecticut's Unfair Trade Practices Act, General Statutes 42-110b
(CUTPA), was not applicable to the case because the loan in question was a commercial loan; and (ix) that Sharilyn Bonesteel had failed to prove her counterclaim that she suffered emotional distress and some physical maladies as a result of anything that plaintiff did, as contrasted with the activities of her former husband) including his use of the impostor.
Sharilyn Bonesteel filed a timely motion to correct pursuant to Practice Book 438 in which she asked the referee to make several changes in his report to include findings: (i) that the plaintiff had met with the defendant Robert Bonesteel at the family home and while there she informed the plaintiff that she would not sign any mortgage papers; (ii) that the plaintiff's lawyer, Attorney Mark Rosenblit, violated the accepted standards of care by permitting the female impostor to sign the mortgage deed and note; and (iii) that the plaintiff failed to prove that the loan was for the benefit of the defendant Robert Bonesteel's corporation, Connecticut Heat Pump Systems of Stamford, Inc. . The attorney trial referee declined to make any substantive changes in his report.
Sharilyn Bonesteel then filed timely objections to the acceptance of the report, Practice Book 440, but did not file any exceptions to the report pursuant to Practice Book 439. Therefore, our task is "limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions." Ruhl v. Fairfield,5 Conn. App. 104, 106, 496 A.2d 994 (1985).
The objections by the defendant Sharilyn Bonesteel to the referee's recommendations are: (i) that the plaintiff has "unclean hands" and is therefore estopped from obtaining a foreclosure because his lawyer was negligent at the closing in permitting the impostor to sign the mortgage papers; (ii) that the loan was a consumer transaction and hence she had the right to rescind the mortgage, a right which was never granted to her; (iii) that the interest rate was usurious; (iv) that the interest rate was unconscionable; and (v) that the plaintiff's conduct in characterizing the loan as a commercial transaction violated CUTPA.
Before analyzing this defendant's objections to the report it should be noted that the court's authority in acting on the attorney trial referee's recommendations is a limited one. In Wilson Trucking Inc. v. Mansour Builders, CT Page 7165 Inc., 20 Conn. App. 420, 423, 567 A.2d 1250 (1989), cert. denied, 204 Conn. 804, 573 A.2d 318 (1990), it was held that "a reviewing authority may not substitute its findings for those of the trier of the facts" The role of the attorney trial referee was also discussed in Dills v. Enfield, 210 Conn. 705, 714, 557 A.2d 517 (1989), which held: (i) that the trial court may not "retry the case"; (ii) that a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the (referee) has failed to find an admitted or undisputed fact, or had found a fact in such doubtful language that its real meaning does not appear"; and (iii) that a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716.
In analyzing the defendant's objections in the light of these cases, and also having in mind that his factual findings must remain undisturbed because no exceptions were taken thereto, Practice Book 439, I find that the referee's report is sound and logical both factually and legally.
The first of the objections by Sharilyn Bonesteel relates to the alleged negligence of plaintiff's attorney in permitting the female impostor to sign her name. The referee found that this attorney did request identification but that the impostor was not able to produce anything identifying herself as Sharilyn Bonesteel, and that ultimately the attorney relied on Mr. Bonesteel's representation that the female with him at the closing was his wife. The referee concluded that while the conduct of plaintiff's attorney could well be deemed negligent, he did not commit any fraud on Sharilyn Bonesteel, and that any such negligence actually hurt his own client, the plaintiff, who was prevented from obtaining a mortgage on the whole property signed by both owners, which is what the plaintiff wanted as security for the loan. The referee rejected the estoppel argument and I concur.
The next objection concerns the nature of the loan, whether it was made for a commercial purpose, or was a consumer loan which this defendant had a right to rescind. The referee found that Robert Bonesteel represented to plaintiff that the money was for his business, and he signed an affidavit to that effect at the closing. The referee further found that the check for the promissory note was made payable to the corporation, Connecticut Heat Pump Systems of Stamford, Inc., and was endorsed for deposit to that company's bank account. From these facts the referee CT Page 7166 concluded that the loan was for a business purpose, and that it was not a consumer loan which would permit a right of recission by Sharilyn Bonesteel.
The defendant Sharilyn Bonesteel claims that the loan was usurious and unconscionable. The referee, on the other hand, found that the loan was exempt from the laws of usury, General Statutes 37-9 (3) ("any bona fide mortgage of real property for a sum in excess of five thousand dollars"). The defendant Sharilyn Bonesteel claimed that the mortgage was not bona fide because the impostor signed it, but the referee concluded that the plaintiff had the right to mortgage his one-half interest in this property and that plaintiff had the right to foreclose this interest. I believe that this is an accurate statement of the law based on Liscio v. Liscio, 204 Conn. 502, 505-06, 528 A.2d 1143
(1987), which refers to General Statutes 47-14c. The effect of the mortgage by Robert Bonesteel was to extinguish the existing joint tenancy, and the plaintiff as mortgagee then held legal title to the subject premises with Sharilyn Bonesteel as in effect tenants in common.
The loan was not deemed unconscionable because although the effective annual interest rate was 23.01%, the loan amortization rate was 19.5%. The referee pointed out that Robert Bonesteel was a shaky credit risk and had already been rejected by one second mortgagee, so he concluded that the interest rate was not unconscionable under the circumstances.
With respect to Sharilyn Bonesteel's argument that the plaintiff violated CUTPA because he attempted to characterize the loan as commercial, the referee concluded that the loan in fact was commercial in nature and therefore there was no CUTPA violation.
The referee believes and I agree that these special defenses are personal to Robert Bonesteel, and cannot be proffered by Sharilyn Bonesteel because the plaintiff is not attempting to foreclose her interest in the premises and she is not being held personally liable on the note and mortgage.
In any event, it appears to me that the defendant Sharilyn Bonesteel is attempting to substitute her version of the facts for those found by the attorney trial referee, an attempt which was disapproved in Argentis v. Gould,23 Conn. App. 9, 19, 579 A.2d 1078 (1990). Because I believe that the referee's recommendations are in accordance with the applicable law his report is accepted. Furthermore, I CT Page 7167 find no material error in his report or any other reason why it is unacceptable. Practice Book 443. In the words of Practice Book 440, the "conclusions of fact" were "properly reached on the basis of the subordinate facts found."
Therefore, judgment may enter for the plaintiff John Christiano, Trustee, against Robert Bonesteel and in favor of the pl plaintiff with respect to Sharilyn Bonesteel's counterclaim. The debt as of the date of this judgment is found to be $28,500 principal, plus interest of $12,715.72 and attorney's fees of $21,468.75, for a total of $62,684.47. A foreclosure of the interest of Robert Bonesteel in the subject premises is ordered, and a motion should now be claimed for the foreclosure short calendar, at which time the court can determine whether there should be a strict foreclosure of sale, fix the exact amount of the debt as of that date, including supplemental attorney's and appraiser's fees, and rule on other details of a foreclosure.
William B. Lewis, Judge