[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This controversy concerns the meaning and effect of a subordination agreement. The plaintiff is Amity Bank, now known as Connecticut Bank of Commerce. The defendants are Station Drive Associates, Inc. (Station Drive); Anthony T. Winn, George Katsaros, and Romano Pompa, who are principals of Station Drive; and Rocco Intrieri, Frank Intrieri, Albert Intrieri, Anthony Intrieri, and the estate of Michael Intrieri, deceased. The plaintiff alleges in its two count complaint that its mortgage from Station Drive has priority over a purchase money mortgage taken back by the Intrieris [hereinafter "defendants"] when they sold the subject premises to Station Drive in June of 1988. This mortgage was foreclosed and the defendants own the equity of redemption in the property.
The defendants filed several special defenses including a claim that Station Drive had, mortgaged to them the subject premises, which are located in the Cos Cob section of Greenwich, in an instrument dated June 17, 1988, in the original principal amount of $1,249,000, and that this mortgage had precedence over a later mortgage to the plaintiff, dated CT Page 3129 November 23, 1988, in the original principal amount of $800,000. These defendants concede that they executed a subordination of mortgage dated July 3, 1989, but claim in their first special defense that this instrument is void for lack of consideration. In the second special defense, the defendants contend that the plaintiff's mortgage does not have priority over their purchase money mortgage because it fails to comply with certain provisions regarding construction mortgages contained in Station Drive's mortgage to the Intrieris. In the third defense, the defendants alleges a breach of fiduciary duty and a violation of the duty of good faith on the part of the plaintiff. In the fourth defense, defendants allege that the Intrieris believed and understood that the subordination of mortgage they executed on July 3, 1989 resulted in their mortgage having precedence over all but $300,000 loaned by the plaintiff to Station Drive for the construction of a home on one of the five lots in an approved subdivision owned by Station Drive, and that the subordination should be reformed to effectuate this understanding and intention. In the fifth special defense, defendants assert that if they had in fact lost their priority, they had suffered a financial loss. The sixth defense requests that the court enter a strict foreclosure of their purchase money mortgage. The seventh special defense claims a violation of General Statutes49-3.[1] The defendants also filed a counterclaim alleging that the plaintiff's actions violated General Statutes 42-110g, the Connecticut Unfair Trade Practices Act (CUTPA).[2] In its reply to these special defenses and counterclaim, the plaintiff reiterated its contention that because the defendants executed a subordination agreement, its mortgage from Station Drive was a first mortgage and took precedence over the defendants' purchase money mortgage.
This case was referred to Attorney Emanuel Margolis, an attorney trial referee, in accordance with General Statutes 52-434(a) and Practice Book 428 et seq. The referee conducted a trial and then filed a very detailed report containing a number of findings of fact, including: (1) that the purchase money mortgage executed by Station Drive to the defendants provided that it would be subordinated to a construction mortgage subsequently executed by Station Drive, but that the subordination was limited to a separate mortgage of $300,000 on each of the lots in the subdivision; (2) that the mortgage to the plaintiff in the amount of $800,000 was entitled "Commercial and Open End Mortgage and Security Agreement," and provided that the interest rate would be the same as plaintiffs "prime rate" plus 1.5%, and would fluctuate periodically as the plaintiffs prime rate changed;[3] (3) that the interest rate on plaintiff's loan to Station Drive changed a number of times during the period in question and corresponded to changes to the national prime rate during the same period; (4) that in November of 1988, at the time Station Drive executed a mortgage to the plaintiff, no subordination agreement had CT Page 3130 been executed; (5) that the plaintiff upon learning of this omission, and already having advanced $350,000 to Station Drive, contemplated calling its loan to Station Drive, but instead accepted a subordination agreement executed by the defendants some eight months later in July of 1989; (6) that the subordination agreement states that its intention and purpose was to subordinate the defendants' purchase money mortgage of $1,249,000 from Station Drive to the mortgage given by Station Drive to the plaintiff; (7) that the subordination agreement referred to a modification agreement between plaintiff and Station Drive modifying plaintiff's $800,000 mortgage, but such an instrument does not exist; (8) the subordination agreement provides that the mortgage by Station Drive to the defendants was confirmed "except as expressly set forth" in the agreement itself;[4]
(9) that although no monetary consideration as such was given the defendants for their execution of the subordination agreement, they did benefit from the moneys advanced by plaintiff to Station Drive because the funds were used for general improvements to the subdivision, and also enabled Station Drive to make interest payments to the defendants on their purchase money mortgage; (10) that counsel for the defendants described the plaintiff's mortgage as a "first" mortgage when writing to his clients requesting that they sign the subordination agreement, and this attorney also acknowledged that the agreement his clients were executing was different and not as favorable to them as the subordination provisions in the purchase money mortgage;[5] and (11) that the principal amount due the plaintiff is approximately $800,000 and interest roughly another $150,000 at this time.
Based on these findings of fact, the attorney trial referee concluded: (1) that the mortgage to plaintiff was not a construction mortgage, but rather the loan was a commercial line of credit secured by a $800,000 mortgage executed in accordance with General Statutes 49-2(c);[6]
(2) that the plaintiffs use of a variable prime rate was proper as it was done in good faith and in the ordinary course of business based on market; conditions; (3) that the subordination agreement executed by the Intrieris resulted in the plaintiff's mortgage having priority over their purchase money mortgage, and that these defendants knew that would be the result, and received advise from their attorney to that effect;[7]
(4) that there was consideration for the execution of the subordination agreement in that the plaintiff continued to advance funds to Station Drive after it was executed by the Intrieris, which benefitted [benefited] the defendants because the money advanced by plaintiff resulted in improvements to the subdivision; (5) that the nonexistence of the "modification agreement" referred to in the subordination agreement is irrelevant as the defendants did not rely on such document in agreeing to execute the subordination agreement;[8] and (6) that the defendants had not sustained their burden of proving their special defenses or counterclaim in that there was no agreement on the part of the plaintiff to be bound by the terms CT Page 3131 of the purchase money mortgage; no evidence of bad faith in the plaintiff's advancing of funds to Station Drive; and no evidence of mistake or misunderstanding on the part of the defendants which would justify reformation of the subordination agreement.
The defendants, pursuant to Practice Book 438, moved to correct the report in a number of ways. Actually, by a rough count, it appears that the defendants seek corrections in almost 100 findings and conclusions by the referee, but their requests can be summarized in the following categories: (1) that the subordination agreement is invalid because the mortgage to the plaintiff differs from the construction mortgage as described in the purchase money mortgage from Station Drive to the defendants; (2) that the subordination agreement is void because it makes reference to a modification agreement which does not exist; (3) that the defendants did not intend or understand that their mortgage was being subordinated to the total amount of the funds advanced by the plaintiff to Station Drive, and they did not receive any consideration for their execution of the subordination agreement; (4) that plaintiff's mortgage is invalid because the proceeds were supposed to be used only for financing "soft construction costs and site preparation," and plaintiff had introduced no evidence that the funds were used for those purposes; and (5) that the interest rate was not calculated in a proper manner.
The referee declined to make any substantive changes to his report, but he did reiterate the following: (1) that the wording of the subordination agreement is clear and explicit and does not permit any inference that the Intrieris did not know what they were signing when they executed the agreement; (2) that the Intrieris signed the subordination agreement after being advised by their attorney that it would result in plaintiffs mortgage obtaining a priority position; (3) that although the provisions of the plaintiff's mortgage do not precisely fit the description of the contemplated construction mortgage contained in the defendants' purchase money mortgage, the loan in question is a commercial revolving line of credit, and in any event, the defendants knew they were subordinating their mortgage to plaintiffs mortgage; (4) that plaintiff only advanced the balance of the loan to Station Drive after obtaining the subordination agreement; (5) that the plaintiff formulated its prime rate in a commercially reasonable manner based on "objective marketplace criteria," and applied the rate to all its customers except for one who had a $700,000 balance in the bank and took out a loan for $400,000; and (6) that since the loan was not a construction mortgage as described in General Statutes 49-3 the funds did not have to be applied exclusively to soft construction and site work, although one of the trial exhibits appears to indicate that Station Drive received approximately $32,000 in July, 1989 for "site development work" CT Page 3132 for the subdivision.
The defendants then filed exceptions to the referee's report pursuant to Practice Book 439, including the required transcript. The exceptions repeat the substance of the motion to correct and again contend that the referee's report should be amended to indicate: (1) that the prime rate was not computed in a proper manner; (2) that the Intrieris never received any consideration for their execution of the subordination agreement; (3) that the plaintiffs loan was used for purposes other than soft construction and site work; (4) that no modification agreement was ever created despite the reference to it in the subordination agreement; and (5) that the Intrieris did not intend to subordinate their mortgage to the plaintiff's mortgage.
Regarding the scope of this court's authority in reviewing an attorney trial referee's recommendations as to the facts of a given case, it is very clear that such review is limited. The Connecticut Supreme Court has stated that: (1) the trial court may not "retry the case"; (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear"; and (3) a trial court may not engage in "fact-finding contrary to the report of the referee." Dills v. Enfield, 210 Conn. 705,714, 557 A.2d 517 (1989). Our role is to determine whether the conclusions of fact and law by the referee "are legally and logically correct and whether they find support in the facts found by the referee." Bernard v. Gershman, 18 Conn. App. 652, 656, 559 A.2d 1171 (1989); Practice Book 440. This procedure appears to be similar to that employed by an appellate court in reviewing a decision of the trial court. "On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . ." (Internal quotation marks and citations omitted.) Fortier v. Newington Group, Inc., 30 Conn. App. 505,509, 620 A.2d 1321 (1993).
Therefore, the first issue is whether the referee's factual findings are supported by the record. A review of the transcript indicates, among other things, that with respect to the calculation of interest, an officer CT Page 3133 of the plaintiff testified that "senior management looks at what the going rates are as far as Wall Street Journal prime, other prime rates, and specifically prime rates that are established at comparable banks of its size and location." One of the defendants testified that he signed the subordination agreement of his own volition "because Kevin Tierney (his attorney) told me to sign it because Amity Bank wanted me to sign it;" and in response to a query whether he had any questions about the subordination agreement, he answered "no." Another of defendants' arguments involves an alleged lack of consideration for the execution of the subordination agreement, but a defendant testified "no" in response to a question of whether he anticipated "receiving money for signing that document." This same witness testified that he understood "soft construction" to include "road building and all the services and site planning." This quotation relates to the claim that the funds advanced by plaintiff were restricted in use. In this same context, an officer of the plaintiff bank testified in response to a question about the use of the plaintiff's funds that "unless it's a construction mortgage, if its a line of credit you don't do it" referring to an alleged obligation on the part of the borrower "to show you either that they had done any site preparation or that they had actually expended any money for soft construction."
Of course, there was testimony in the record to the contrary. However, "[a]lthough much of the trial testimony was disputed, the credibility of witnesses, the findings of facts and the drawing of inferences are all within the province of the trier of fact . . . . It is futile to assign error involving the weight of testimony or the credibility of witnesses . . . . This court can neither retry the facts in order to make our own findings nor pass on the credibility of witnesses . . . but can only review such findings to determine whether they could legally, logically and reasonably be found thereby establishing that the trial court could reasonably conclude as it did." (Internal quotation marks and citations omitted.) Citytrust v. Page, 28 Conn. App. 907, 908,610 A.2d 197 (1992). In reviewing the motion to correct and exceptions, one senses that the defendants are attempting to substitute their own version of the facts for those found by the referee, a practice which was discountenanced in Argentis v. Gould, 23 Conn. App. 9, 19,579 A.2d 1078 (1990). This inference is fortified by the fact that the defendants found fault with almost 100 of the referee's findings of fact, conclusions and recommendations.
The next issue is whether the referee's conclusions that plaintiff's mortgage takes precedence over the purchase money mortgage held by defendants, and that a judgment of strict foreclosure of plaintiff's mortgage should enter both follow logically and legally from his factual CT Page 3134 findings. The conclusions were based on the finding that the subordination agreement clearly indicated that its purpose was to subordinate the defendants' purchase money mortgage to the lien of plaintiff's mortgage. The conclusions that the Intrieris knew what they were signing, and that plaintiffs mortgage was valid and enforceable, including the calculation of the variable interest rate, also find support in the referee's factual findings.
The defendants also filed objections to the acceptance of the report, Practice Book 440. The objections repeat the contentions contained in the motion to correct and in the exceptions, viz., (1) that the mortgage deed to plaintiff does not comply with General Statutes 49-3 because it does not contain a "safe harbor" provision;[9] (2) that plaintiff did not produce any evidence that the loan by plaintiff was used for the subject premises and/or for the purposes stated in the mortgage; (3) that the prime rate was based on subjective criteria used by the plaintiff's chief executive officer; (4) that the Intrieris did not receive any consideration for their execution of the subordination agreement; (5) that plaintiff did not rely on the subordination agreement with the defendants when it advanced funds to Station Drive; (6) that the subordination agreement referred to a modification of plaintiff's mortgage which was never prepared or executed; and (7) the Intrieris signed the subordination agreement only under the belief that their mortgage would not be completely subordinated to plaintiff's mortgage.
Based on the standard of review in Dills v. Enfield, supra, I could neither find nor determine that the attorney trial referee's conclusion that the mortgage to plaintiff took precedence over defendants' purchase money mortgage was unwarranted, illegal or illogical. To the contrary, I believe that, in the words of Practice Book 440, his recommendations were "properly reached on the basis of the subordinate facts found." There was consideration for the plaintiff's mortgage in that the defendants benefitted [benefited] from funds advanced by the plaintiff because they were used for improvements to the subdivision. Plaintiff's mortgage did not have to correspond precisely with the description of a construction mortgage set forth in the purchase money mortgage because it was not a construction mortgage, but rather a commercial line of credit. The Intrieris knew they were subordinating their mortgage to the lien of plaintiff's mortgage since they were so advised by their attorney. The absence of the modification agreement referred to in plaintiff's mortgage is immaterial in that the defendants did not rely on such document when they agreed to execute the subordination agreement. Plaintiff's prime rate was formulated in a commercially reasonable manner in that it was set in the ordinary course of business and was based on market conditions. General Statutes49-2(c) was not violated since this statute does not limit the use of the CT Page 3135 proceeds in a commercial revolving loan.
Thus, no material error in the referee's report has been found, or any other sufficient reason why it is unacceptable; see Practice Book 443; and therefore judgment is entered in accordance with the report of the attorney trial referee in favor of the plaintiff Amity Bank as follows: (1) a judgment of strict foreclosure of the plaintiffs mortgage hereby enters; (2) that mortgage is adjudged to be a first mortgage and to take precedence over the purchase money mortgage from Station Drive to the defendants; (3) the principal debt due plaintiff is determined to be $799,998; and (4) the plaintiff should claim to the foreclosure short calendar the matters of calculation of interest, late charges and attorney's fees, as well as the current valuation of the realty, the setting of law dates, and the determination of any other pertinent matter.
Costs are to be taxed by the clerk.
So Ordered.
Dated at Stamford, Connecticut, this 24th, day of March, 1994.
William B. Lewis, Judge