[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This controversy involves a claim for past due wages and related benefits by the plaintiff, Narender Roper, against his former employer, the defendant, Martin Richland, and two companies controlled by Richland, viz., Richland Consulting Services and Richland Computer Services. The plaintiff brought a complaint in six counts. In the first count, the plaintiff alleges that he worked for the defendants from July 2, 1984, until January 11, 1985; that he was promised a salary of $35,000 a year, disability insurance, two weeks paid vacation, certain personal and sick days, payment for unused vacation, sick and personal days, hospitalization, and certain life insurance benefits; and that the defendants breached this agreement by failing to pay him for wages due for the first four days of his employment and for approximately seven weeks prior to the cessation of his employment; by failing to compensate him for unused vacation, sick and personal days; by failing to provide him with life and disability insurance; and by failing to reimburse him for certain out-of-pocket expenditures. In the second count, the plaintiff alleges that the defendants' refusal CT Page 1088 to pay him wages was "wilful" and in violation of certain provisions of the New York Labor Law. In the third count, the plaintiff claims that the defendants were unjustly enriched by their actions. In the fourth count, the plaintiff contends that Richland personally guaranteed in writing that he would pay certain medical bills incurred by the plaintiff. The plaintiff alleges in the fifth count that the defendants committed a "theft." In the sixth count, the plaintiff alleges that the defendants made fraudulent misrepresentations.
In their answer, the defendants denied the material allegations of the complaint, and filed a two count counterclaim. In the first count, the defendants allege that plaintiff was employed by them and was assigned to work in Albany as an applications programmer/analyst at Sperry Corporation (Sperry); that plaintiff breached his agreement with defendants by failing to supply them with time sheets reflecting his work at Sperry; and that while employed by the defendants, the plaintiff solicited employment directly with Sperry and that he was subsequently hired by Sperry. In the second count of their counterclaim, the defendants allege that in the course of soliciting direct employment with Sperry, the plaintiff made "false and malicious statements" about the defendants which resulted in a loss of the defendants' business relationship with Sperry. In his reply to this counterclaim, the plaintiff agrees that he sought direct employment by Sperry, but only after the defendants failed to pay him the wages that were due.
This case was referred to Attorney William A. Phillips, an attorney trial referee, in accordance with General Statutes §52-434(a) and Practice Book § 428 et seq. The referee conducted a trial and then filed a very comprehensive report containing certain findings of fact, including: (1) that plaintiff worked for the defendants starting on July 2, 1984, as a computer consultant at Sperry in Albany where he was placed by the defendants, and the plaintiff resigned, effective January 13, 1985; (2) that defendants agreed to pay the plaintiff at an annual rate of $35,000, and after six months of employment, the plaintiff would be entitled to hospitalization and life insurance, vacation, certain holidays and personal days; (3) that plaintiff's claim for wages, unused vacation, sick and personal days, and certain expenses amounted to approximately $9,500, and that he also claimed prejudgment interest and "damage enhancement" under the New York Labor Law, and interest pursuant to the Connecticut law regarding offers of judgment, for a total CT Page 1089 demand of approximately $56,000; (4) that the plaintiff was paid for the first few days of his employment and he was paid thereafter at the agreed rate of $35,000 per year; (5) that plaintiff successfully solicited direct employment by Sperry; and (6) that plaintiff offered no evidence that the defendants breached their contract with him by failing to pay him for the last seven weeks of his employment.
Based on these findings of fact, the attorney trial referee concluded: (1) that the plaintiff had "failed to sustain his burden that he was not paid in accordance with his contract with defendant for services rendered in December 1984 and January 1985;" (2) that plaintiff failed to submit evidence substantiating his claim for unused sick, vacation and personal days; (3) that the defendants did not promise to pay for certain medical bills of the plaintiff; and (4) that the plaintiff failed to prove his claim that the defendants promised to provide him with hospital and medical insurance. As to the defendants' counterclaim, the attorney trial referee concluded that the defendants failed to prove that the plaintiff breached his contract with them by soliciting direct employment by Sperry, and that they failed to submit evidence that the plaintiff had made false and malicious statements about them. Thus, the referee recommended that judgment enter in favor of the defendants on the complaint, and in favor of the plaintiff with respect to the defendants' counterclaim.
The plaintiff, pursuant to Practice Book § 438, moved to correct the report in a number of respects, including that: (1) the defendants failed to plead "payment" as a special defense, as required by Practice Book § 164 and, therefore, the defendants cannot claim that they paid the plaintiff, and furthermore the referee erred in concluding that the plaintiff had the burden of proving that the defendants had not paid him, because if the defendants had pleaded the special defense of payment, as required, the defendants would have had the burden of proof of payment; (2) in any event, the plaintiff had proved that the defendants had failed to pay him after November 15, 1984, in a number of ways, including that an IRS W-2 statement furnished by the defendants does not indicate payment of wages for the last two pay periods of 1984; (3) the defendants stopped paying the plaintiff for his services as soon as they learned that he was soliciting direct employment with Sperry, despite previously having agreed with the plaintiff that they would have no objection if the plaintiff went to work directly for Sperry; (4) CT Page 1090 in a letter from the defendants dated January 15, 1984, which was sent in response to the plaintiff's letter of December 3, 1984, the defendants did not deny or dispute the plaintiff's contention that he had not received the last four paychecks owed to him; (5) the defendants did promise to pay approximately $1,500 in medical bills incurred by the plaintiff; (6) the defendants did promise to provide life insurance for the plaintiff; (7) that the defendants owed the plaintiff for unused vacation pay because the plaintiff had worked a few days after the six month period specified in the agreement as entitling the plaintiff to a vacation after such period; and (8) the defendants owe the plaintiff wages at an increased rate of $38,000 per year after January 1, 1984, until January 11, 1984.
The referee declined to make any substantive corrections to his report or to his recommendation that judgment enter in favor of the defendants with respect to the plaintiff's complaint, except to note the following: (1) that he agreed that "payment" should have been pleaded as a special defense pursuant to Practice Book § 164, but that the plaintiff proceeded at trial and in his post-trial briefing on the theory that he had the burden of proving his claim that the defendants had breached their contract with him; (2) that because plaintiff conducted the trial in this fashion, he had waived his right to claim that the burden of proof had to be shifted to the defendants to prove payment; and (3) the defendants had no specific duty to rebut every claim in plaintiff's letter to them dated December 31, 1984, and hence, the defendants cannot be deemed to have admitted nonpayment of wages.
The plaintiff filed exceptions to the referee's report pursuant to Practice Book § 439, including the required transcript, and also objections in accordance with Practice Book § 440. The exceptions and the objections both contend that (1) the referee was in error in failing to find that the defendants had breached their agreement with him with respect to an increase in salary after six months of employment, compensation for unused sick, vacation and personal days, the providing of certain insurance benefits, and by not paying for certain medical bills and out-of-pocket expenditures; (2) the referee was in error based on Practice Book § 164 for failing to preclude the defendants from introducing any evidence of payment, and in shifting the burden to the plaintiff to prove nonpayment. CT Page 1091
As to this court's scope of review of an attorney trial referee's recommendations regarding the facts of a given case, the Supreme Court has stated that: (1) the trial court may not "retry the case"; and (2) a court may not find additional facts or reject facts found by the referee unless, in the words of Practice Book § 439, "a material fact has been found without evidence or the [referee] has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear." Dills v. Enfield,210 Conn. 705, 714, 557 A.2d 517 (1989). Furthermore, a trial court may not engage in "fact-finding contrary to the report of the referee." Id., 716[.] According to Bernard v. Gershman,18 Conn. App. 652, 656, 559 A.2d 1171 (1989), this court's task is to determine whether the conclusions of fact and law by the referee "are legally and logically correct and whether they find support in the facts found by the referee." See also Practice Book § 440.
Therefore, the first issue is whether the referee's factual findings are supported by the record. This analysis appears to include three separate issues, to wit, payment of fringe benefits, the burden of proof of payment or nonpayment, and unpaid wages. A review of the transcript indicates, among other things, that: (1) the defendants did possess documentary evidence that the plaintiff had been paid for his services during the first week of his employment in July, 1984, despite his allegation in the complaint to the contrary; (2) the defendant Martin Richland, who represented himself pro se at the trial, testified at one point in the trial that, to the best of his knowledge, he did not owe any money to the plaintiff, although conceding that he lacked any records to substantiate this belief, due to the lapse of almost ten years since the events in question; (3) this defendant agreed that he did not pay the plaintiff for the week ending January 11, 1985, but a letter from him to the plaintiff was introduced in evidence which stated, among other things, that "[T]he company has not issued a check for January 8, 1985. This check is being withheld since the company is not in receipt of any timesheets for January"; (4) he had agreed to reimburse the plaintiff for certain medical bills, but only if the plaintiff's insurance company had not reimbursed him, and that he assumed such payments had been received by the plaintiff; and (5) after the plaintiff advised the defendants that he was leaving their employ, Martin Richland felt no further obligation to reimburse plaintiff for any of his medical bills. CT Page 1092
Of course, there was testimony in the record to the contrary by the plaintiff regarding payment of these so-called fringe benefits which the referee was justified in rejecting, particularly as much of it was vague at best. Moreover, "[a]lthough much of the trial testimony was disputed, the credibility of witnesses, the findings of facts and the drawing of inferences are all within the province of the trier of fact . . . . It is futile to assign error involving the weight of testimony or the credibility of witnesses. . . . This court can neither retry the facts in order to make our own findings nor pass on the credibility of witnesses . . . but can only review such findings to determine whether they could legally, logically and reasonably be found thereby establishing that the trial court could reasonably conclude as it did." (Citations and internal quotation marks omitted.) Citytrust v. Page, 28 Conn. App. 907,908, 610 A.2d 197 (1992). In reviewing the motion to correct and exceptions, one senses that the plaintiff is attempting to substitute his own version of the facts for those found by the referee, a practice which was discountenanced in Argentinis v.Gould, 23 Conn. App. 9, 19, 579 A.2d 1078 (1990), rev'd on other grounds, 219 Conn. 151, 592 A.2d 378 (1991). This inference is fortified by the fact that the plaintiff found fault with almost fifty of the referee's findings of fact, conclusions and recommendations. Thus, the referee's conclusions regarding vacation pay, insurance, medical bills, etc., legally and logically follow from his findings of fact, which are based on evidence received at trial, and hence, these conclusions must be accepted.
The issue of pleading payment as a special defense, in accordance with Practice Book § 164, has been presented by the plaintiff. The reason for requiring payment to be pleaded as a special defense seems clear. If a plaintiff pleads breach of contract by nonpayment, and the defendant simply denies the allegations, as happened in the present case, a plaintiff does not know whether a defendant is denying the existence of any such agreement, or is claiming payment in accordance with the agreement. However, during the pleading stage of this case, the plaintiff made no attempt to clarify the defendants' denial by, for example, a request to revise. Furthermore, at trial and in the post-trial briefing, the plaintiff did not object to the introduction by the defendants of evidence of payment, or claim that the defendants assumed the burden of proof of payment even though they did not plead payment as a special defense. CT Page 1093
This subject was discussed in E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970) § 127, p. 520: "A special rule operates in the case of payment, which must be specially pleaded even if the plaintiff alleges nonpayment. Generally, however, if the plaintiff alleges the non-existence of a defense, the matter can be put in issue by a denial and the plaintiff will have assumed the burden of proof on the issue." (Footnotes omitted.) Furthermore, the "[f]ailure to plead a defense may also be cured on trial if the plaintiff allows evidence thereof to come in without objection." (Footnote omitted.) Id.; see also Thompson Peck, Inc. v. Harbor Marine Contracting Corp. , 203 Conn. 123,132, 523 A.2d 1266 (1987) (stating that "the failure to raise a special defense is waived when evidence comes in without objection."); Ellis v. Rogers, 15 Conn. App. 362, 366,544 A.2d 663 (1988) (stating that "evidence relating to . . . payment . . . was admitted without objection by the plaintiff . . . . Any defect in the pleading is therefore deemed to have been waived.")
Therefore, based on the standard of review in Dills v.Enfield, supra, this court can neither find nor determine that the attorney trial referee's conclusion that the plaintiff had failed to prove that the defendants breached their contract with him regarding the payment of fringe benefits was unwarranted, or not legally and logically correct. To the contrary, in the words of Practice Book § 440, his recommendations were "properly reached on the basis of the subordinate facts found." No material error in the referee's report has been found, or any other sufficient reason why it is unacceptable. See Practice Book § 443.
With respect to the claim of unpaid wages, Martin Richland testified at one point that: "I suspect I may not have [paid the plaintiff] but I don't know for sure but I will take it for granted that I didn't pay it." The only solid piece of evidence was the IRS W-2 form furnished by the defendants to the plaintiff for the year 1984, which indicated that the plaintiff had not been paid what he was due for that year in the amount of $2,916.66, or two paychecks. The evidence also indicated that the first check for 1985 was not paid, for a total due of $4,374.99. Richland appeared to acknowledge this when he testified: "He [the plaintiff] should have had 24 checks. If there are three checks I will honor that because I have no record of disputing that in anyway," and again along the same lines: "I might owe him for three checks of $1,458.33 and I would make restitution on that if CT Page 1094 that's the case." Richland also testified that he did not pay the final check because he never received a timesheet from the plaintiff covering that period, and the referee was justified in crediting that testimony.
With respect to the counterclaim, the defendants did not file a motion to correct, exceptions or objections. Hence, judgment is entered in favor of the plaintiff to recover the sum of $4,374.89 from the defendants, and in favor of the plaintiff with respect to the defendants' counterclaim.
Prejudgment interest based on General Statutes § 37-3a is not awarded because the money was not wrongfully withheld. Richland thought he had paid the plaintiff, but his payment records were missing. Associated Catalog Merchandisers, Inc. v.Chagnon, 210 Conn. 734, 748-49, 557 A.2d 525 (1989). There is no reason to award "enhanced" damages under the New York Labor Law. The defendants were located in Connecticut and that is where the plaintiff was hired pursuant to a letter sent by the defendants dated June 5, 1984. The connection with New York arose because the defendants assigned the plaintiff to perform his job at the Department of Social Services in Albany. Furthermore, offer of judgment interest is not justified because the plaintiff is not being awarded $9,000, the amount of his offer of judgment. General Statutes § 52-192a(b).
No costs are to be taxed.
So Ordered.
Dated at Stamford, Connecticut, this 2nd day of February, 1995.
William B. Lewis, Judge