[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff Fred Herzman brought this action in two counts seeking, in the first count, to foreclose on a mechanic's lien and, in the second count, to recover damages for labor and material furnished pursuant to an agreement between Herzman and the defendant Gianatasio. The defendants counterclaimed against the plaintiff alleging breach of contract in the first counterclaim and violations of Conn. Gen. Stat. § 42-110 (a) et seq. (CUTPA) in the second counterclaim with the defendant P.M.P. Associates seeking a discharge of the mechanic's lien in the third counterclaim. CT Page 197-UU
This matter was tried to the court on January 14 and 15, 1997. At the conclusion of the evidence, the plaintiff conceded that he had proven no damages and the defendants withdrew the second counterclaim alleging a CUTPA violation. For the reasons stated below, the court finds for the defendants P.M.P. Associates and Philip A. Gianatasio on the complaint, for the plaintiff Fred Herzman on the defendants' first counterclaim and for the defendant P.M.P. Associates on the third counterclaim.
Finding of Fact
The evidence in this case consisted of the testimony of Fred Herzman and Philip Gianatasio[1] and a number of documents. Based on the evidence, the court makes the following findings of fact:
1. The defendant P.M.P. Associates is the owner of property known as 5 Mountain Brook Road in Cheshire, Connecticut. P.M.P. Associates consists of the defendant Philip A. Gianatasio and Polyurethane Specialties Co.
2. On April 26, 1991, the plaintiff Fred Herzman (hereafter "Herzman"), a licensed electrical contractor, and the defendant Philip Gianatasio (hereafter "Gianatasio") entered into a written CT Page 197-VV agreement in which Herzman promised to complete the wiring of a new house located at 5 Mountain Brook in Cheshire, Connecticut in exchange for a total payment by Gianatasio of $21,200. (Ex. A) (Hereafter "the contract"). The contract was signed by both parties.
3. The contract contained 20 numbered specifications and 14 lettered specifications (A-N) as well as 9 items added by Gianatasio and initialed by both parties. (Ex. A.) The numbered specifications and the items added by Gianatasio detail specific areas that Herzman agreed to wire. The lettered specifications contain general provisions, with the exception of item G, which appears, in part, to duplicate the provisions of item 3.[2]
4. With the exception of item 6 where Herzman agreed to provide two Nutone 350 central vacuum systems, items 13 and 13B where Herzman agreed to provide Lightolier rough housings for recessed lights, item 17 where Herzman agreed to supply fixtures for pull down garage lights, and item I where Herzman agreed to supply Leviton plugs and switches, the contract on its face was for the wiring of the house only.[3]
5. Herzman testified that he did not fully perform all specified items in the contract and that Gianatasio was entitled to a credit for those items (items 6, 9, 11, 15, 16, 17, 18 and CT Page 197-WW a number of items on page 3 of the contract). That credit amounts to $2,625 based on Herzman's value of the uncompleted work.
6. Herzman testified that he also performed extra work not specified in the contract including the installation of: more than the contract's 80 specified recessed lighting housings (referred to by the parties as "HiHats"); a total of 451 outlets (compared the 80 specified in the contract); an additional 35 "home runs" which he defined as running a wire to the source of the electricity from the outlet box; piping for a future outside cabana; and a pipe under the driveway. The pipe under the driveway was not part of the original specifications in the contract.
7. Herzman testified that the April 26, 1991 contract was modified by a document entitled "PROPOSAL" and dated October 31, 1991 (ex. D). There is no credible evidence that Gianatasio accepted the terms of the October 31, 1991 "PROPOSAL." Further, Gianatasio introduced the original of that document (ex. 1) which was not signed by either party.
8. Herzman appears to have used blank forms with the title "PROPOSAL" in lieu of bills on some occasions, including two documents dated April 25, 1992 concerning outlets, "home runs" CT Page 197-XX and "HiHats". (exs. 9 10)
9. Between April 1992 and October 1992 the parties had an ongoing dispute regarding the number of outlets and recessed light housings ("HiHats") that Herzman had installed.
10. On October 2, 1992, the parties entered into a second written agreement which they both signed (exs. 9 10). They agreed that the total due for the "HiHats bill" was $1550, allocated as $652 for rough work and $898 at completion, and the total due for "outlet bill" was $9150, allocated as $7234 for rough and $1911 for completion. (ex. 7) The parties also agreed that "any other extras due to date are included as part" of the agreed upon payment and that Gianatasio "does not owe Fred Herzman any money for any other extras due to date."
11. On October 2, 1992, Gianatasio paid Herzman $7891 for the rough work specified in the October 2, 1992 agreement. (ex. 6) Herzman never did the completion work specified in the October 2, 1992 agreement and does not claim that he should be paid for that work.
12. Notwithstanding the letter Herzman wrote to Gianatasio on October 22, 1992 (ex. 8), Herzman accepted the October 2, 1992 agreement and cashed the check Gianatasio gave him (ex. 6). CT Page 197-YY
13. Gianatasio testified that in addition to the October 2, 1992 payment of $7891, he paid Herzman $20,734.84 on the contract of April 26, 1991. Herzman cashed all of Gianatasio's checks. (Exs. 3, 4)
14. Gianatasio testified that on January 23, 1993 he sent a certified letter to Herzman terminating the contract after a telephone conversation in which Herzman indicated he was not going to finish the job.
15. Gianatasio testified that some time after January 23, 1993, he entered into a contract for electrical work with Abate Electric and that the contract price was $18,739.31, although he has not yet paid that full amount to Abate nor has all the work been done.
The First Count of the Complaint and the Third Counterclaim
In the first count of the complaint, the plaintiff seeks to foreclose a mechanic's lien (ex. H) in the amount of $11,774 filed against the defendant P.M.P. Associates in the land records of the town of Cheshire on February 19, 1993. In the third counterclaim, the defendant P.M.P. Associates seeks a discharge of this mechanic's lien. CT Page 197-ZZ
The amount of a mechanic's lien is diminished by payments made before notice of the lien. Anthony Julian RailroadConstruction Co. v. Mary Ellen Drive Associates, 39 Conn. App. 544,547 (1995). In this case, Herzman concedes that he was paid in excess of the $21,200 specified in the contract.[4] The evidence establishes that Gianatasio paid Herzman a total of $28,625.84 well before the date that the mechanic's lien was filed. The plaintiff has presented no evidence that the sum of $11,774 is due and owing to him for any work performed before the filing of the lien.
Accordingly, judgment should enter in favor the defendant P.M.P. Associates on the first count of the complaint and on the third counterclaim. The court orders that the mechanic's lien be discharged.
The Second Count of the Complaint
In the second count of the complaint as revised the plaintiff seeks damages from the defendant Gianatasio for the breach of contracts entered into on April 26, 1991 and October 31, 1991 and for electrical "extras" not included in those agreements in the amount of $11,774. The plaintiff has failed to prove that he sustained any damages. CT Page 197-AAA
The evidence establishes that Herzman and Gianatasio entered into two agreements: (1) the contract of April 26, 1991 in which Herzman agreed to wire the house at 5 Mountain Brook in exchange for a total payment of $21,200 and (2) the contract of October 2, 1992 in which Herzman agreed to accept certain payments for all the electrical "extras" due to date and upon which Gianatasio paid Herzman $7891. There is no evidence that the parties entered into any contract on October 31, 1991.
With respect to the April 26, 1991 contract, Herzman concedes that Gianatasio is entitled to a credit of $2625 for work that Herzman did not complete, bringing the contract price down to $18,575. Herzman claims he is entitled to damages for the following "extras": $700 for cabana piping, $1225 for 35 "home runs" and $316.60 for installing a pipe under the driveway on October 9, 1992. The installation of the cabana piping and "home runs's was completed before the October 2, 1992 agreement which fully compromised all electrical "extras" due to date. While the parties dispute whether the pipe under the driveway was part of the April 26, 1991 contract work, the court will add it to the contract price to arrive at a total due to Herzman under the contract of $18,896.16. Herzman concedes he was paid in excess of that amount on the contract. Thus Herzman has sustained no damages. CT Page 197-BBB
The First Counterclaim
In the first counterclaim, the defendants seek damages for breach of contract from the plaintiff. The defendants have failed to prove by a fair preponderance of the evidence that Herzman materially breached their agreements.
The parties dispute whether the contract of April 26, 1991 was simply for the wiring of the house, as Herzman claims, or for the provision of fixtures and other items in addition to wiring, as Gianatasio claims. The court has found that with the exception of item 6 where Herzman agreed to provide two Nutone 350 central vacuum systems, items 13 and 13B where Herzman agreed to provide Lightolier rough housings for recessed lights, item 17 where Herzman agreed to supply fixtures for pull down garage lights, and item I where Herzman agreed to supply Leviton plugs and switches, the contract on its face was for the wiring of the house only. The court concludes that Herzman substantially performed the contract for wiring the house and is not in material breach of the contract.
"The determination of "[w]hether a building contract has been substantially performed is ordinarily a question of fact for the trier to determine.' Nor'easter Group, Inc. v. ColossaleCT Page 197-CCCConcrete, Inc., 207 Conn. 468, 472, 542 A.2d 692 (1988);Argentinis v. Gould, 23 Conn. App. 9, 14, 579 A.2d 1078 (1990), rev'd in part, 219 Conn. 151, 592 A.2d 378 (1991). The analysis necessarily involves an inquiry into the totality of facts and circumstances surrounding the performance of the contract. See 2 E. Farnsworth, Contracts 8.12." Miller v. Bourgoin, 28 Conn. App. 491,496 (1992). In this case, the facts and circumstances include the negotiated price for the April 26, 1991 contract, the contract's facial specification that it was for wiring, the parties' testimony establishing that the wiring was substantially completed and the fact that the October 2, 1992 agreement did not address any item other than outlets and "Hihats."
Herzman does admit that he did not perform the completion work specified in the October 2, 1992 agreement. However, the defendants have failed to prove any damages with respect to that breach since Herzman was not paid for the completion work. Conclusion
Conclusion
For the reasons stated above, judgment should enter as follows: For the defendants P.M.P. Associates and Philip A. Gianatasio on the complaint, for the plaintiff Fred Herzman on the defendants' first counterclaim and for the defendant P.M.P. CT Page 197-DDD Associates on the third counterclaim. The mechanic's lien filed against P.M.P. Associates on February 19, 1993 is ordered discharged.
LINDA K. LAGER, JUDGE