[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] POST-TRIAL MEMORANDUM OF DECISION
CT Page 6068
 I. PROCEDURAL BACKGROUND
On July 29, 1997, the plaintiff, Gerard J. Bouchard, d/b/a Bouchard Builders Company (hereinafter the "plaintiff"), filed a three-count complaint against the defendant, Kenneth G. Boyer, d/b/a New England Investors (hereinafter the "defendant"), for breach of contract, quantum meruit/unjust enrichment and for violations of the Connecticut Unfair Trade Practices Act. On November 3, 1997, the defendant filed a five-count counterclaim sounding in breach of contract, breach of implied warranty, negligence, unfair trade practices and breach of implied covenant of good faith and fair dealing. Both parties seek money damages, punitive damages, costs, interest and attorney's fees.
Following a non-jury trial before this court, the parties filed post-trial memoranda on February 11, 1999. The court now makes the following findings of fact and conclusions of law.
 II. FINDINGS OF FACT AND CONCLUSIONS OF LAW
The plaintiff is an experienced contractor and the defendant is a real estate investor. The parties entered into a contract on April 12, 1996, whereby the plaintiff agreed to construct a single-family dwelling on land owned by the defendant. The contract is a standard owner-contractor agreement form, as drafted by the American Institute of Architects (AIA), Document A101 (hereinafter the "Contract"). Article 1 of the contract expressly incorporates by reference "General Conditions of the Contract" as set forth in AIA Document A201 (hereinafter "General Conditions"). See Defendant's Exhibit 14.
 A. The Contract
The project is specified as a single-family house on lot number three at 6 Somerset Lane, Old Lyme, Connecticut. Article 2 sets forth eleven specifications to constitute the work required of the plaintiff. Specifically, the plaintiff was obligated to: "construct a single family house per plans; no kitchen and or bath cabinets/countertops furnished or installed; no appliances; no wallpaper and or wall coverings; no fill material supplied or installed; no water or rock removal; no removal of contaminated materials; no stump removal from site, only burial on site; wood CT Page 6069 beams in place of steel; fireplace flue to be 12" x 12", furnace flue to be 8" x 8"; no wood ceiling in master bedroom." See Contract, Article 2, Nos. 1 through 11. Article 3 establishes April 9, 1996, as the date of commencement, and September 14, 1996, as the date at which the plaintiff was required to achieve substantial completion of the entire project. Article 4 states that the total contract price is $220,000, and also sets forth a "lite fixtures allowance" for $2000, and a "tree clearing allowance" for $1500. Changes to the contract and the contract price are permissible and accomplished by execution of a written Change Order signed by all parties. See General Conditions, §§ 7.1, 7.2.
 B. Undisputed Modifications: The Change Orders
On April 23, 1996, the parties signed and agreed to Change Order Number MC1, which changed the contract as follows: "Truck and place sanitary fill as required by site plan [$1,700]; Add footing drains per site plan [$370]; Add infiltrators per site plan [$1,784]." The contract price was agreed to be increased from $220,000 to $223,854.
On May 29, 1996, the parties signed and agreed to Change Order Number MC2, which changed the contract as follows: "Blast ledge in foundation area to obtain foundation depth [$1,600]; Excavator to move blasting mats and remove rock [$1,200]." The contract price was thereby increased from $223,854 to $226,654, and the date of substantial completion was extended from September 14, 1996 to September 18, 1996.
On July 3, 1996, the parties signed and agreed to Change Order Number MILEC-02, which, through various changes and credits, decreased the total contract price by $14,860. Thus, as of July 3, 1996, the total contract price owed by the defendant was $211,794.
The parties further agree that two verbal change orders increased the contract price by $750 for stump removal, and $9,007 for kitchen cabinets. Therefore, after adding these items, the total contract price was at $221,551. The parties also agree that the contract price was further reduced by $1,100 (granite top credit), $600 (two cabinets credit), $4,115 (direct payment to Kitchen Beautiful by defendant), and $1,000 (direct payment to Ray's Sheetmetal by defendant). The contract price was therefore reduced by $6,815, so as to bring the total contract price to CT Page 6070$214,736.
 C. Disputed Additions Subtractions
The plaintiff asserts that the contract price was increased by $3,854 (septic system), $1,200 (Jacuzzi), $1,700 (septic fill), $1,400 (excavator blasting), and $5,000 (site fill), for a total amount of $13,154. Thus, according to the plaintiff, the total contract price should be $227,890. The defendant disputes these additions.
The plaintiff also adds $3,591 as the balance to complete the contract, thus increasing the contract price to $231,481. However, the plaintiff subtracts $800 (light fixture allowance), $100 (tub surround) and $1000 (floor finish) to decrease the contract price to $229,581.
 D. Balance Due
The parties agree that the defendant, as of November 13, 1996, made payments to the plaintiff totaling $218,480.12. Thus, according to the total contract price as asserted by the defendant ($214,736), the defendant overpaid by $3,744.12. According to the contract price asserted by the plaintiff ($229,581), however, the defendant owes $11,100.88.
 E. Other Amounts Claimed
The plaintiff, in addition to claiming that he is due $11,100.88 pursuant to the contract, also claims he is owed interest at 1.5% for thirteen months, $8,209.40 in attorney's fees and costs, and $16,418.80 in double attorney's fees under CUTPA. According to the plaintiff, therefore, the total amount owed to him by the defendant is $38,088.75.
The defendant, on the other hand, claims that he paid an additional $17,324.76 to complete the construction of the house, plus $13,375 for the cost of missing items that the plaintiff allegedly failed to install. The defendant also claims $20,636.99 in attorney's fees, plus $21,703.26 in interest on his construction loan after the contract date of completion, and $25,550.24 as the balance of 15% lost profit from projected sale price of home. Thus, including the $3,744.12 that the defendant claims he overpaid, the defendant claims that the plaintiff owes him a total of $102,334.37. CT Page 6071
 F. The Plaintiff's Case 1. Breach of Contract
In his breach of contract claim, the plaintiff alleges that the defendant: (1) failed to make a progress payment and payment in full for the substantially completed work; and (2) wrongfully terminated the plaintiff without giving the contractually-required seven-day written notice.
 (a) Substantial Performance
The court must first determine whether the plaintiff substantially performed his contractual obligations. "A contractor has substantially performed his contract where any defects or omissions are small in comparison with the whole contract price, and where it is not unreasonable to leave the responsibility upon the owner to take such steps as are necessary to repair, replace or supply the defects or omissions." 1 D. Wright W. Ankerman, Connecticut Jury Instructions (Civil) (4th Ed. 1993) § 165, pp. 324-25. There is no definite test to apply, but the finder of fact must apply its own judgment "in light of the testimony as to the nature of the defects or omissions the defendant claims to have occurred, their effect upon the general character and use of the structure, the amount it would cost to repair, replace or supply them, and all the other evidence which would bear upon the reasonableness of placing upon the defendant the responsibility to take the necessary steps to that end." Id.
"Substantial performance of a building contract . . . is ordinarily a question of fact for the trier to determine . . . It is peculiarly within the province of the trier of fact to judge the credibility of a witness." (Citations omitted; internal quotation marks omitted.) Edens v. Kole Construction Co.,188 Conn. 489, 494, 450 A.2d 1161 (1982); see also Nor'Easter Group,Inc. v. Colossale Concrete, Inc., 207 Conn. 468, 472-73,542 A.2d 692 (1988). "The analysis necessarily involves an inquiry into the totality of facts and circumstances surrounding the performance of the contract." Miller v. Bourgoin,28 Conn. App. 491, 496, 613 A.2d 292, cert. denied,223 Conn. 927, 614 A.2d 820 (1992).
"Generally, where a time for performance is stated in an agreement, a party's tender of performance within a reasonable CT Page 6072 time thereafter will be considered substantial performance unless the parties intend that time for performance be of theessence. . . . Because delays are typical in transactions involving real property or building contracts, time is ordinarily not of the essence in these contracts. . . . The resolution of whether it is part of the contract involves a question of the intent of the parties, to be determined, as a matter of fact, from the language of the contract, the circumstances attending its negotiation, and the conduct of the parties in relation thereto." (Citations omitted; internal quotation marks omitted; emphasis added.) Miller v. Bourgoin, 28 Conn. App. 491, 498,613 A.2d 292, cert. denied, 223 Conn. 927, 614 A.2d 820 (1992).
The court finds that time was not of the essence in this contract. Therefore, the court must determine whether the plaintiff substantially completed his performance by the contractual ending date of September 18, 1996, or a reasonable time thereafter. After reviewing the exhibits, and hearing testimony, this court concludes that the plaintiff did not substantially complete the contract by September 18, 1996. However, the court must determine whether the defendant's acts or omissions precluded the plaintiff from substantially completing the contract at that date or a reasonable time thereafter.
The plaintiff claims that the defendant's failure to record the subject lot as a distinct and separate lot from the subdivision prevented him from securing a building permit. This omission of the defendant allegedly caused the plaintiff a delay in commencement of construction, and ultimately, preventing him from being able to substantially complete the contract by the specified date.
It is implied "that the contractor shall be permitted to proceed with his construction in accordance with the contract and that he shall be given possession of the premises to enable him to do so." Hartford Electric Applicators of Thermalux. Inc. v.Alden, 169 Conn. 177, 182, 363 A.2d 135 (1975). "In most cases it will not be difficult for the contractor to prove that there was a delay [in commencement]. The contractor will usually encounter difficulty, however, in proving that the delay was the result of some event for which the owner was responsible, that the event actually caused the delay, and that the specific damages claimed resulted from the alleged delay." R. Cushman, Construction Litigation: Representing the Owner (2d Ed. 1990) § 8.17, p. 283. "The owner must provide access rights, easements, rights-of-way, CT Page 6073 and permits necessary for the commencement of construction, unless the parties agree otherwise. . . . Quite often, however, such obligations are delegated by contract." 1 S. Stein, Construction Law (Matthew Bender 1998) § 5.05 [2] [b].
Under the contract, the plaintiff was obligated to "secure and pay for the building permit and other permits . . . necessary for proper execution and completion of the Work. . . . General Conditions, § 3.7.1. "If the Contractor [plaintiff] is delayed at any time in progress of the Work by an act or neglect of the Owner [defendant] . . . or other causes beyond the Contractor's control . . . then the Contract Time shall be extended by [written] Change Order for such reasonable time as the Architect may determine." General Conditions, § 8.3.1.
The court finds that the plaintiff properly attempted to secure building permits but was unable to do so for reasons beyond his control. Although the plaintiff should have extended the contract time through a written change order, the court finds that the defendant allowed the plaintiff to extend work beyond the September ending date. In fact, as late as November 25, 1996, the defendant was still permitting the plaintiff to perform without terminating him despite his failure to substantially complete by September 18, 1996.
Accordingly, the court finds that the proper date by "which to measure whether the plaintiff substantially performed would necessarily have to be beyond the September 18, 1996 completion date. The plaintiff's testimony, which was not substantially rebutted, indicates that the house was 99% complete by February, 1997. In light of the defendant's apparent waiver of exact compliance with the original contract-ending date, February, 1997 was a "reasonable time thereafter." Other than floor finishing, touch-up painting and tub tile surround, the court finds that the house was substantially completed by February, 1997.
 (b) Failure to Make Progress Payment
The plaintiff alleges, and the court finds, that the defendant failed to pay in accordance with the November 25, 1996 Application and Certificate for Payment.
"The general rule to be applied in construction cases is that the failure to make progress payments is a breach of contract so substantial as to render the contract nugatory. . . . The failure CT Page 6074 to make installment payments when due goes to the essence of a contract. . . . A failure to make any payments for work in progress goes to the root of the bargain of the parties and defeats the object of the parties in making the agreement." (Citations omitted.) Silliman Co. v. S. Ippolito Sons,1 Conn. App. 72, 75-76, 467 A.2d 1249, cert. denied, 192 Conn. 801,470 A.2d 1218 (1984).
The court also finds that the defendant made repeated representations to the plaintiff during the month of December that he intended on paying the November 25, 1996 application for payment. The court finds that the defendant's failure or refusal to make this installment payment constitutes a material and substantial breach of the contract.
 (c) Wrongful Termination
The parties agree, and the court finds, that sometime in December, 1996, or early January, 1997, the defendant unilaterally terminated the contract without any advance written notice to the plaintiff. On or about January 22, 1997, however, the parties reopened negotiations and apparently mutually agreed to reinstate the contract. The plaintiff again submitted his November 25, 1996 application for payment, with a revised date to January 15, 1997. The court finds that the plaintiff began performing pursuant to a punch-list, but was eventually terminated for a second time by the defendant on or about the first week in February, 1997. Like the first unilateral termination, this second termination did not provide the plaintiff with advance written notice.
"Under termination clauses, the owner may be given the right to terminate the contractor `for cause' or `for default.'" R. Cushman, supra, § 3.27, p. 123-25. "Many contracts have procedures that require more than simple notice. These procedures will be enforced." R. Cushman, supra, § 8.9, p. 271 n. 77, citingMulti-Service Contractors, Inc. v. Town of Vernon, 193 Conn. 446,455, 477 A.2d 653 (1984) (holding contractor's noncompliance with contract conditions and notice provisions were inexcusable). "In a contract containing a termination clause requiring the owner to give notice to the contractor that, unless the noted defaults are cured, the contractor will be terminated, the failure to provide this notice will invalidate the termination." (Emphasis added.) 1 S. Stein, supra, § 4.13 [1] [b], citing Providence Washington Ins.CT Page 6075Co. v. Beck, 255 N.E.2d 600 (Mass. 1970) (holding contractor's failure to comply with seven-day notice provision under contract before termination was substantial breach); see also UnitedStates v. Centex Construction Co., 638 F. Sup. 411, 413 (W.D. Va. 1985) (subcontractor's claims barred because of its failure to notify general contractor within seven days after additional work performed); Service Steel Erectors Co. v. SCE, Inc., 573 F. Sup. 177,178-79 (W.D. Va. 1983) (same). "[I]f a party fails to give proper notice, that party cannot terminate the contract." Id., citing Cuddy Mountain Concrete v. Citadel Construction, 121 Idaho 220,824 P.2d 151, 158 (1992) (holding general contractor breached its contract with subcontractor by failing to give seven-day written notice of termination).
"[W]hen a particular form of notice, or length of time, is stipulated to in the contract, exact compliance is necessary, and giving the prescribed notice is an essential prerequisite to termination of the contract." 1 S. Stein, supra, § 4.13 [1] [c]. The termination must be in good faith. 1 S. Stein, supra, § 4.13 [2], citing Dinnis v. Roberts, 35 Conn. App. 253, 257,644 A.2d 971, cert. denied, 231 Conn. 924, 648 A.2d 162 (1994) (holding proof of homeowner's bad faith precludes homeowner from repudiating contract violative of Connecticut Home Improvement Act). "If an owner wrongfully terminates a contractor . . . [the owner] will be found in material breach of the contract." 1 S. Stein, supra, § 4.15 [5].
Under the contract in the present case, Article 8 allows the plaintiff or defendant to terminate or suspend the contract pursuant to Article 14 of the General Conditions. Article 14 provides in pertinent part: "[T]he Owner, upon certification by the Architect that sufficient cause exists to justify such action, may without prejudice to any other rights or remedies of the Owner and after giving the Contractor and the Contractor's surety, if any, seven days' written notice, terminate employment of the Contractor. . . ." (Emphasis added.) General Conditions, § 14.2.2; see also General Conditions, § 2.4.1 (requiring seven-day written notice).
The court finds that, on two occasions, the defendant terminated the plaintiff without providing the required seven days written notice. The court disagrees with the defendant's argument that the "numerous meetings" and written "punch lists" were adequate to give the plaintiff notice of the defendant's CT Page 6076 intention to terminate. Accordingly, the two acts of wrongful termination constitute material and substantial breaches of the contract.
 2. Quantum Meruit/Unjust Enrichment
In this count, the plaintiff alleges that: (1) he performed additional services and provided materials for items beyond the Contract, which were authorized by the defendant; (2) the defendant's land has been improved and increased in value as a result of plaintiff's labor; and (3) the defendant has failed to pay for these additional items.
Quantum meruit is an "equitable remedy of restitution by which a plaintiff may recover the benefit conferred on a defendant in situations where no express contract has been entered into by the parties." Burns v. Koellmer,11 Conn. App. 375, 384, 527 A.2d 1210 (1987). "Quantum meruit is the remedy available to a party when the trier of fact determines that an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. . . . Such contracts are determined from evidence of the parties' course of conduct which implies a promise to pay for the services rendered. The pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to [it] that [it] would be compensated in the future, impliedly promised to pay [it] for the services [it] rendered." (Citation omitted.) Id., 383-84. "Quantum meruit . . . is the form of action which has been utilized when the benefit received was the work, labor, or services of the party seeking restitution." Id., 384.
"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract. . . . A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another. . . . [I]t becomes necessary in any case where the benefit of the doctrine is claimed, to examine the circumstances and the conduct of the parties and apply the standard." (Citations omitted; internal quotation marks omitted.) HartfordWhalers Hockey v. Uniroyal Goodrich Tire, 231 Conn. 276, 282-83, CT Page 6077649 A.2d 518 (1994).
"Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefitted [benefited], (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) Barbara Weisman, Trustee v.Kaspar, 233 Conn. 531, 550, 661 A.2d 530 (1995). "[T]he determinations of whether a particular failure to pay was unjust and whether the defendant was benefitted [benefited] are essentially factual findings for the trial court. . . . [Such] equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Citation omitted.) Hartford Whalers Hockey v. Uniroyal Goodrich Tire, supra, 231 Conn. 283.
The court finds that the following items were not part of the original contract, but were subsequently performed or installed by the plaintiff: septic system; Jacuzzi; septic fill; excavator blasting; and site fill. The court does not find credible the defendant's assertion that he did not authorize the additions set forth above. The court also finds that these additions were not anticipated by the parties at the time of contracting and not provided for in the original contract. In addition, the court finds that the plaintiff performed or installed the additional items with the expectation of getting paid for his services, and that, as a result, the defendant's land has been improved and its value increased. Accordingly, the defendant unjustly did not pay the plaintiff for the foregoing beneficial services and provisions to his land.
 3. CUTPA
The plaintiff alleges that the defendant's actions were wilful and intentional in breaching the contract. In addition, the plaintiff alleges that the defendant engaged in a calculated pattern to attempt to avoid paying for materials or services he knowingly authorized.
"It is well settled that in determining whether [an act or] practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining whether [an act or] practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been CT Page 6078 established by statutes, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . . All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Thus a violation of CUTPA may be established by showing either an actual deceptive practice . . . or a practice amounting to a violation of public policy." (Citations omitted; internal quotation marks omitted.) SaturnConstruction Co. v. Premier Roofing Co., 238 Conn. 293, 310-11,680 A.2d 1274 (1996).
"A majority of Superior Court cases support the claim that a simple breach of contract, even if intentional, does not amount to a violation of CUTPA; a claimant must show substantial aggravating circumstances to recover under the Act. . . . A simple contract breach is not sufficient to establish a violation of CUTPA." (Citations omitted; internal quotation marks omitted.)Holeva v. M Z Associates, Superior Court, judicial district of New Haven, Docket No. 098403 (November 18, 1998, Levin, J.). "This does not mean that recovering under CUTPA for a breach of contract is impossible . . . the same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation." (Citations omitted; internal quotation marks omitted.) Slitz v. Pyramid Custom Home Corp. , Superior Court, judicial district of Danbury, Docket No. 323247 (April 4, 1997, Stodolink, J.) (finding allegations of several misrepresentations during course of parties' dealings sufficient to state CUTPA and breach of contract claims).
In the present case, the court does not find that the defendant's conduct amounted to an intentional and calculated pattern of attempting to avoid his obligations under the contract. The evidence does not disclose that there were any fraudulent or unethical practices by the defendant so as to rise to the level of a CUTPA violation. Accordingly, the court finds that the plaintiff cannot recover under this count.
 G. The Defendant's Case
The defendant asserts a five-count counterclaim for: (1) breach of contract; (2) breach of implied warranty under the New CT Page 6079 Home Warranties Act; (3) negligence; (4) CUTPA; and (5) breach of implied covenant of good faith and fair dealing.
The defendant alleges that the plaintiff breached the contract by failing to: (i) make additions to, or deductions from, the contract in writing; (ii) construct the home in compliance with the plans and specifications; (iii) complete work in a timely manner; (iv) perform in a workmanlike manner; and (v) obtain written assent from defendant before supplying and charging for additional items. The defendant also claims that he was forced to pay for repairs to correct and complete the plaintiff's defective work. In addition to claiming that the plaintiff made material misrepresentations and negligently failed to comply with the plans and specifications, the defendant also alleges violations of implied warranties as set forth in the New Home Warranties Act, General Statutes § 47-118.
 1. Breach of Contract
"A party cannot recover on a contract unless he has fully performed his obligations under it, has tendered performance, or has some legal excuse for not performing." Ravitch v. StollmanPoultry Farms. Inc., 165 Conn. 135, 149, 328 A.2d 711 (1973);Argentinis v. Gould, 23 Conn. App. 9, 14, 579 A.2d 1078, aff'd in part, rev'd in part on other grounds, 219 Conn. 151, 592 A.2d 378
(1990). "It is a general rule of contract law that a total breach of the contract by one party relieves the injured party of any further duty to perform further obligations under the contract."Rokalor v. Connecticut Eating Enterprises, 18 Conn. App. 384,391, 558 A.2d 265 (1989).
Because of the defendant's material breaches in: (1) failing to make a progress payment; and (2) terminating the plaintiff in contravention of the contractually-required seven-day written notice, the defendant is precluded from seeking recovery under the contract. Notwithstanding the defendant's inability to recover under the contract, the court finds that the plaintiff's failure to obtain written change orders in some instances did not amount to a substantial or material breach of the contract. In addition, the court has already found that the plaintiff substantially completed the contract in substantial compliance with the plans and specifications. Accordingly, notwithstanding that the defendant cannot recover under the contract, the court finds that the plaintiff was not in material breach. CT Page 6080
2. Breach of Implied Warranties under General Statutes § 47-118:The New Home Warranties Act
The defendant cannot recover under this count as a matter of law because the contract required the house to be built on real estate already owned by the defendant.
"In every sale of an improvement by a vendor to a purchaser . . . warranties are implied that the improvement is: (1) Free from faulty materials; (2) constructed according to sound engineering standards; (3) constructed in a workmanlike manner, and (4) fit for habitation. . . ." General Statutes § 47-118. A "vendor" is anyone engaged in the business of creating an improvement on real estate. See General Statutes § 47-116. "Connecticut courts have given a broad construction to the term `vendor' in the New Home Warranties Act." (Internal quotation marks omitted.) Four Beaches Condo v. W.C. Brescia Plumbing, Superior Court, judicial district of New Haven, Docket No. 384124 (May 23, 1997, Licari, J.)
However, a "purchaser" is defined specifically as the "original buyer . . . of any improved real estate." See "General Statutes § 47-116. Therefore, "[b]y its terms, the [New Home Warranties Act] applies in situations where the vendor constructs the improvement on real estate owned directly or indirectly by him and conveys the improved real estate to the purchaser. TheAct does not apply where a landowner contracts with a builder toconstruct a new home on real estate already owned by thelandowner." (Emphasis added.) Pelletier v. Pelletier DevelopmentCo., Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 463671 (March 14, 1996, Fineberg, J.)
Because it is undisputed that the defendant owned the land on which the plaintiff contracted to build the house, as a matter of law, the defendant cannot recover under this count.
 3. Negligence
When an owner-defendant alleges failure to comply with contractual specifications and defective or negligent performance on the part of the builder-plaintiff, "[t]he burden [is] upon the defendant to prove [the] affirmative allegations of the counterclaim." Chinigo v. Ehrenberg, 112 Conn. 381, 383-84,152 A. 305 (1930). The court finds that the defendant did not prove that the plaintiff's performance was sub-standard or in an CT Page 6081 unworkmanlike manner. Although the I exhibits reveal minor defects, the court finds that the plaintiff substantially performed by February, 1997, and was in the process of remedying those defects prior to being wrongfully terminated by the defendant. The evidence proffered by the defendant does not appear to this court to establish an unworkmanlike performance by the plaintiff. Accordingly, the court finds that the plaintiff was not negligent, and denies recovery under this count.
 4. CUTPA
The defendant alleges that the plaintiff's intent in filing a mechanic's lien against the entire subdivision was to harass and put economic pressure on the defendant. In addition, the defendant alleges that the plaintiff misrepresented his ability to complete the contract at the price submitted and in accordance with standard building quality levels.
The plaintiff submitted evidence that he was only able to file a mechanic's lien against the entire subdivision because of the way in which the lot was recorded. This court does not find such an act by the plaintiff to constitute an unfair or deceptive act as defined in CUTPA. In addition, the court did not find any evidence revealing the plaintiff's misrepresentation as to his ability or competence to complete the contract. Accordingly, the court denies the defendant recovery under this count.
 5. Implied Covenant of Good Faith Fair Dealing
"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." Habetz v. Condon, 224 Conn. 231, 238, 618 A.2d 501
(1992). "The phrase `good faith' is used in a variety of contexts, and its meaning varies somewhat with the context. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving `bad faith' because they violate community standards of decency, fairness or reasonableness." (Internal quotation marks omitted.) Warner v.Konover, 210 Conn. 150, 155, 553 A.2d 1138 (1989). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an CT Page 6082 honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose." (Citations "omitted; internal quotation marks omitted.) Habetz v. Condon, supra, 224 Conn. 237.
The court finds that the plaintiff did not exhibit bad faith, dishonest purposes or sinister motives in his course of performing the contract. To the contrary, the court finds that the plaintiff attempted to preserve friendly and communicative relations with the defendant. Accordingly, the court denies the defendant recovery under this count.
 H. Damages
"As a general rule, contract damages are awarded to place the injured party in the same position as he would have been in had the contract been fully performed. . . . We recognize that there is no unbending rule as to the evidence by which such compensation is to be determined . . . and that damages may be based on reasonable and probable estimates. . . . But it is equally clear that damages must be based on evidence." (Citations omitted; internal quotation marks omitted.) Bertozzi v. McCarthy,164 Conn. 463, 468, 323 A.2d 553 (1973). "It is incumbent upon a plaintiff in a contract action to prove his damages with all the certainty which is reasonably possible, but where exactness is not possible he is not therefore to be precluded from a recovery, and the best approximation to certainty is all that is required." (Internal quotation marks omitted.) Walter Kidde Constructors,Inc. v. State, 37 Conn. Sup. 50, 80, 434 A.2d 962 (1981).
"The determination of whether or not interest is to be recognized as a proper element of damage, is one to be made in view of the demands of justice rather than through the application of any arbitrary rule. . . . The real question in each case is whether the detention of the money is or is not wrongful under the circumstances. . . . Basically, the question is whether the interests of justice require the allowance of interest as damages for the loss of use of money. . . . [This is] primarily an equitable determination and a matter lying within the discretion of the trial court." (Citations omitted; internal quotation marks omitted.) Bertozzi v. McCarthy, supra,164 Conn. 466-67.
After the change orders and undisputed modifications, the CT Page 6083 total amount owed by the defendant would have been $214,736. See Part II B. The plaintiff also agrees to subtract $800 for light fixture allowance, $100 for tub surround, and $1000 for floor finish, to bring the total amount owed to $212,836. Adding in the additional items, see Part II C, the total amount owed increases by $3,854 for septic system, $1,200 for Jacuzzi, $1,700 for septic fill, $1,400 excavator blasting, and $5,000 site fill, for a total of $13,154. Thus, the total amount owed by the defendant would have been $225,990. In addition, the plaintiff adds in $3,591 as the balance to complete the contract, increasing the total amount owed to $229,581. See Part II C.
It is undisputed that the defendant has paid $218,480.12. Therefore, the court finds that the defendant owes $11,100.88. In addition, the contractual interest at 1.5% for thirteen months equals $2,164.67. The plaintiff incurred reasonable attorney's fees and costs in the amount of $8,209.40. Accordingly, judgment shall enter in favor of the plaintiff for the total amount of $21,474.95.
So Ordered.
D. Michael Hurley Judge Trial Referee